No. 26,349.

The State of Kansas, *Appellee*, v. J. W. Phares, *Appellant*.

SYLLABUS BY THE COURT.

1. Forgery—*Information—Intent to Defraud.* Objections to an information charging forgery and related offenses held not to be well taken.

2. Same—*Evidence—Presumptions.* To sustain a charge of forgery it is not necessary to prove the manual execution of the false signature by the defendant. The unexplained fact that the defendant had possession of the forged instrument knowing its character, with intent to pass it, with other circumstances here present, was sufficient to justify an inference that he forged it.

3. Same—*Evidence—Sufficiency.* The unexplained fact of guilty possession or of uttering a forged instrument in the county of the prosecution, with little or no further evidence, is enough to support a finding of the forgery having been committed there. And the evidence in this case is held sufficient for the purpose.

4. Same—*Evidence—Admissibility.* Objections to the admission of evidence of a number of signatures being those of the defendant are held not to have been well taken.

5. Criminal Law—*Trial—Form of Verdict—Oral Direction.* The rule is applied that in a criminal case directions to a jury as to the form of their verdict are not instructions in such sense as to require to be in writing.

6. Same—*New Trial—Newly Discovered Evidence.* A showing in support of a motion for a new trial on account of newly discovered evidence is held to be insufficient.

7. Forgery—*Separate Counts—Cumulative Sentences.* Convictions may be had upon separate counts; and cumulative punishment imposed, for the forging of a note, the forging of a mortgage securing it, and the guilty possession of such note.

8. Same—*Uttering Forged Paper—Place of Commission of Offense.* The offense of uttering a forged note and mortgage by sending them by mail to the payee in another state is not complete in this state and therefore not punishable here.

Appeal from Trego district court; Jacob C. Ruppenthal, judge. Opinion filed February 1, 1926. Affirmed as to three counts; reversed as to one.

*John R. Parsons,* of Wakeeney, for the appellant.

*C. B. Griffith,* attorney-general, *C. A. Burnett, R. E. Boynton,* assistant attorneys-general, and *W. H. Wagner,* county attorney, for the appellee.

Criminal Law, 16 C. J. pp. 750 n. 75, 1032 n. 7, 1119 n. 7. Evidence, 22 C. J. p. 625 n. 32. Forgery, 26 C. J. pp. 929 n. 31, 940 n. 46, 956 n. 16, 961 n. 56, 974 n. 49, 977 n. 32, 981 n. 46; L. R. A. 1916F, 1254; 12 R. C. L. 151; 61 L. R. A. 819; 16 L. R. A. n. s. 561; 31 L. R. A. n. s. 725; 12 R. C. L. 170.

The opinion of the court was delivered by

MASON, J.:   J. W. Phares appeals from a conviction upon four separate counts charging him with forging a note, forging a real estate mortgage securing it, possessing the forged note with intent to utter it, and offering to sell, exchange and deliver, and selling, exchanging and delivering the forged note with the intention of having it uttered.

No evidence was introduced in behalf of the defendant.   The state's evidence tended to show these facts: Mike Mauzy, a non-resident of the state, owned a tract of land in Trego county, which the defendant, his nephew by marriage, looked after and rented for him.   The defendant forged his uncle's name to a note for $4,000 payable to a bank at Kansas City, Mo., and to a mortgage on such tract securing it.   He sent these to the bank, which in return sent to a bank at Wakeeney a draft for $3,997, payable to that bank and Mike Mauzy.   The defendant induced the Wakeeney bank to send the draft to a bank at Englewood, Colo., for delivery to Mike Mauzy.   The defendant went to Englewood and by representing himself to be Mauzy obtained the draft from the bank. The defendant then had the draft cashed at a Denver bank where he was known, receiving $174 in money and the remainder in cashier's checks payable to his own order.   Mauzy did not sign the note or mortgage and did not authorize any one else to do so. He wrote the defendant about the mortgage, but defendant would not answer.   The defendant told him he had been sick and not in his right mind.

1. In the count charging forgery of the note a full copy of it is correctly set out, but in a description of it the amount to be paid each six months is stated to be $116.92, which is the amount of the last payment, the others being $140.   Complaint is made of the overruling of a motion to quash the count because of this.   The defendant could not have been misled, and the inaccuracy was quite immaterial.   The same count is objected to because it does not allege in terms that the making of the note by the defendant was not authorized.   The allegation was unnecessary, it being pleaded that the note was falsely and feloniously forged.

The count charging possession of the forged note with intent to utter is challenged on the ground that it lacks the element of intent to defraud.   It follows the statute literally.   (R. S. 21-619.)

2. The defendant asserts there was no evidence that the defendant forged the signature of his uncle to the note or mortgage. No attempt was made to show that the signature bore internal evidence of having been written by him or that any one saw him write it. But there was evidence that he negotiated with the Kansas City bank for a loan on the land, had possession of the forged instruments, sent them to the bank, received in exchange a draft which he collected, and told a representative of the bank after an investigation was started that he was wholly and personally responsible for the mortgage having been placed on his uncle's property, and would make it good within thirty days if given time. This was abundant to warrant a finding that he wrote the signatures himself or caused them to be written. (*State v. Earley*, 119 Kan. 446, 239 Pac. 981; 26 C. J. 961-2, 973, note 23; 3 Bishop's New Criminal Procedure, 2d ed., § 436; *Nix v. State*, [Okl.] 202 Pac. 1042.) The state was not required to establish that he wrote the names with his own hand. (26 C. J. 958; 12 R. C. L. 151; note, L. R. A. 1916 F 1254.)

3. A similar contention of the defendant is that there was no evidence of the forgery, particularly that of the mortgage, having been committed in Trego county. The letters of the defendant in the course of the negotiations for the loan were written from Wakeeney, and the forged papers were sent by him from there to the Kansas City bank. These facts warrant the inference that the forgery was committed there. There is said to be a presumption of a forgery having been made where it is uttered. By the weight of authority a forged instrument sent by mail to be realized upon is regarded as uttered where it is delivered and not where it is deposited in the mail. (See authorities cited under topic numbered 8.) But that situation is exceptional. A forgery is ordinarily uttered by a direct personal offer and the inference is permissible that the forgery was committed where the offer is made. The unexplained fact of guilty possession or uttering a forged instrument in the county of the prosecution, with little or no further evidence, is enough to support a finding of the forgery having been committed there. (3 Bishop's New Criminal Procedure, 2d ed., §§ 476-80; 12 R. C. L. 153.) Here the execution of the mortgage purported to have been acknowledged in Denver. The fact is not accounted for by the evidence. But even if the defendant impersonated

Mauzy before a notary there it would not at all follow that the purported signature was written there. The defendant obtained from the Kansas City bank the blanks for the application, note and mortgage. He later obtained a new set on the ground that Mauzy had "got the other ones soiled in some way." An inference that he had been writing them out in Wakeeney is permissible. The question whether the actual forgery was committed in Kansas or Denver was properly submitted to the jury.

4. The application for the loan, purporting to be signed by Mike Mauzy, and sworn to in Trego county before the defendant as a notary public, was produced in court and Mauzy testified the signature was not his. Complaint is made of the overruling of the defendant's objection to the introduction of this paper in evidence on the ground that it was immaterial. Its connection with the case is obvious and its admission proper. Letters from the defendant to the Kansas City bank relating to the loan were identified as files of the bank and introduced in evidence. A representative of the bank had testified he was acquainted with the defendant's signature, had seen him sign his name once, and would say the signatures to the letters were in his writing. This opinion was corroborated by that of the vice president of a Wakeeney bank of which the defendant had been a customer, who had known him twelve years, being in and out of the bank during that time. This evidence is objected to for want of qualification by the witnesses. The objection is not good. Witnesses are permitted to testify to the genuineness of signatures from having seen the name signed once. (1 Wigmore on Evidence, § 694.) The Wakeeney banker's testimony was somewhat general, but his familiarity with the defendant's signature was inferable from it, and if further light had been desired it could readily have been obtained by cross-examination.

5. The verdict as first returned showed a misunderstanding by the jury as to its form. The judge sent them out with oral directions for its correction. This is objected to as a violation of the rule requiring instructions to the jury in criminal cases to be in writing. A mere direction of this character is not within the rule. (*State v. Potter*, 15 Kan. 302.)

6. A new trial was asked on the ground of newly discovered evidence consisting of letters that had been written by Mauzy to the

defendant which are said to be in conflict with his testimony. The conflict is not as direct as contended, the matter is not always important, and however that may be, there is no proof of any facts showing that the letters could not with due diligence have been produced at the trial.

7. A suggestion is made that the defendant should not have received a separate sentence on each count, to be served cumulatively. While the mortgage is an incident to the note and would have no vitality without it, each instrument may be by itself a subject of forgery, and the forgery of either alone might bring different consequences. While the two instruments were in fact handled together throughout, under other circumstances there might have been a conviction with respect to one instrument and not the other. (See 26 C. J. 956; *Van Sickle v. People,* 29 Mich. 61; *Strang v. Westchester Co. Nat. Bank,* 235 N. Y. 68.)

A person can hardly forge a note without having it in his possession for at least a brief time with intent to utter it. But having it in his possession is in itself an offense capable of separate or additional punishment. Each act violates a different section of the statute from that violated by the other. The situation is analogous to that where a multiple penalty is imposed for making intoxicating liquor and having possession of and transporting the same liquor. (*State v. Schesser,* 118 Kan. 635, 236 Pac. 820.)

8. We find, however, that a conviction cannot be sustained upon the count charging the defendant with selling, exchanging and delivering the forged note (or offering to do so) with the intention of having it uttered. The statute under which this count is drawn (R. S. 21-620) defines the offense of procuring another to pass forged paper. (*State .v. Calhoun,* 75 Kan. 259, 88 Pac. 1079.) What the defendant did here was to utter the forged note and mortgage by offering it as good to the Kansas City bank. It was no part of his plan to have the bank utter or pass it, and of no consequence to him whether it did so or not.

In the case last cited the information, although obviously drawn in an attempt to follow the section just referred to, was held to state an offense under the section forbidding the uttering of a forgery. (R. S. 21-621.) There it was specifically alleged that the sale and delivery to a bank of a forged note was with the intent of defrauding that bank, making the case one of uttering to

the bank rather than of arranging for the bank to utter the note. Here the language follows closely that of the statute, and there would be difficulty in construing the charge as one of uttering; and even if that were accomplished the prosecution would fail because the uttering would not have been complete until the arrival of the forged papers in Kansas City, Mo.  (26 C. J. 962, 929-30; 12 R. C. L. 153; *Harrell v. The State of Florida,* 79 Fla. 220, and cases there cited.)

The judgment is affirmed except with respect to the count referred to in the foregoing paragraph, as to which it is reversed with directions for the defendant's discharge so far as it is concerned.