No. 32,921

THE STATE OF KANSAS, *Appellee*, v. HEZEKIAH BROWN, *Appellant*.

(65 P. 2d 333)

Opinion filed March 6, 1937.

*Edward Rooney*, of Topeka, for the appellant.

*Clarence V. Beck*, attorney general, and *Lester M. Goodell*, both of Topeka, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: The defendant, Hezekiah Brown, appeals from a conviction of forgery. Briefly stated, the following is the substance of the testimony introduced at the trial:

Two sisters and a brother own property at 1734 Topeka boulevard in Topeka, Kan. Maggie Bly and her brother, Sam Bly, lived in the property; Birdie Smith lived in Los Angeles, Cal. The property was sold for taxes, and a woman by the name of Jones held a tax deed therefor. In order to raise money to redeem the property Maggie Bly and Sam Bly, on July 11, 1935, executed a power of attorney to the defendant, Hezekiah Brown, "to handle and act for us in the same capacity as ourselves might act in the securing of a loan on our property at 1734 Topeka boulevard, Topeka, Kansas."

The defendant was active in his efforts to secure the loan. He applied to several banks, to building and loan associations, to financial agents; he procured the abstract to the property and had it certified down. All efforts failed. It was then learned by defendant that Maggie Bly and Birdie Smith held insurance policies in the Metropolitan Life Insurance Company, which policies had a cash-surrender value. These policies were delivered by Maggie Bly to the defendant, who in turn delivered them to one Allan Hale, a lawyer; Hale later redelivered these policies to the defendant, who then presented the policies to Mr. Holloway, manager of the Metropolitan Life Insurance Company in Topeka, and from him secured blanks to be filled out on which to get the cash surrender value. These blanks were not filled out in the office of Mr. Holloway. The defendant took the application blanks and later returned them to the office of the Metropolitan Life Insurance Company in Topeka with the proper signatures attached, and the applications were then forwarded by Mr. Holloway to the home office of the insurance company in New York. In regular course a check of the company dated July 10, 1935, in the sum of $201.59, payable to Maggie Bly, Birdie Smith and Hezekiah G. Brown, was forwarded to and received by the defendant. Some days later the defendant, Hezekiah Brown, presented this check to the Merchants National Bank in Topeka to be cashed. Paul Dahlstrom, assistant cashier of that bank, questioned the defendant as to the names on the check. The names Maggie Bly and Birdie Smith were written on the same line and were not separated by a comma. The defendant stated to Mr. Dahlstrom that Maggie Bly and Birdie Smith were one and the same person, that she had been married a time or two. The following excerpt from the testimony is pertinent:

"Q. Did I understand you to say that he told you Maggie Bly and Birdie Smith were one and the same person? A. Yes. I asked him three times and he told me that.

"Q. You asked him over and over again? A. Yes. It looked like a peculiar name to me."

Mr. Dahlstrom stated the check was all signed up and witnessed the first time it was presented, that he refused to cash the check until the defendant was identified. The defendant later appeared with the custodian of the bank, who identified him, and the defendant stated he was getting the money to apply on a loan.

The check was endorsed with the names Maggie Bly, Birdie Smith and Hezekiah G. Brown, with a cross mark after the name of Maggie Bly, and below appeared the names of D. Williamson and P. W. Washam, as "witnesses to mark."

Defendant testified that he took D. Williamson and P. W. Washam to Maggie Bly to witness her mark on the back of the check. Maggie Bly denied that she made the mark on the back of the check, and Williamson and Washam both testified that they were induced by the defendant to place their names on the back of the check for the purpose of identifying the defendant, Brown.

Birdie Smith, whose name appears as one of the payees in the check, and whose name also appears written on the back of the check, was living in California. The defendant, Brown, had never seen Birdie Smith and had never received any letters or communications from her. The defendant testified that he wrote the name of Birdie Smith on the back of the check.

As the record in this case fails to show a specification of errors, and as the overruling of the motion for a new trial is not assigned as error, there is a grave question whether there is anything before this court for review. (*State v. Shehi*, 125 Kan. 110, 263 Pac. 787.)

Notwithstanding this state of the record we have examined with attention the abstract and briefs of counsel.

Appellant first complains that the court committed reversible error in failing to instruct the jury on defendant's theory of the case—namely, that he acted on the power of attorney given him by Maggie Bly and Sam Bly without any criminal intent.

It does not appear that any request for special instructions was presented to the trial court. It is well settled in this jurisdiction that error cannot be urged on appeal for failure to instruct when no request was made for such instruction, where the general charge

fairly presents the case to the jury. (*State v. Winters*, 81 Kan. 414, 105 Pac. 516; *State v. Turner*, 114 Kan. 721, 220 Pac. 254; *State v. Ross*, 77 Kan. 341, 94 Pac. 270.)

But there is another answer to this first contention. Defendant does not claim he signed the name of Maggie Bly on the back of the check; on the contrary, he asserts that she signed by a mark and that the same was witnessed. How can he claim immunity under a power or warrant of authority when he denies he ever exercised such power? The power of attorney given the defendant to secure the loan on the real estate was signed by Maggie Bly and Sam Bly. It was not signed by Birdie Smith, and the defendant could not well assert that any power or authority he might have under such power of attorney could be stretched far enough to authorize defendant to endorse the name of Birdie Smith on the check. He admits he never saw nor heard from her, yet he states that he signed her name on the check. In neither case does he pretend to act under authority. So it turns out that on the testimony of the defendant himself the first contention must fail.

The next proposition advanced is that the court erred in giving instruction No. 3½. Such instruction reads:

"You are further instructed that if you find beyond a reasonable doubt that the signatures of Maggie Bly and Birdie Smith are false, then I instruct you that possession of said forged instrument is evidence from which you may infer that the person in whose possession such forged instrument was found, forged the same. To sustain the charge of forgery, it is not necessary to prove the manual execution of the false signatures by the defendant. The possession by the defendant of a forged instrument raises a presumption of guilt, and unless he has rebutted it by competent evidence, you should return a verdict of guilty."

In *State v. Early*, 119 Kan. 446, 239 Pac. 981, the defendant was convicted of three separate felonies—of forging, passing and falsely endorsing a certain check. In that case the court said:

"But as to the actual forgery of the name James More by defendant, the state admits that it relies for proof to sustain the conviction on the first count on the evidence inherent in the circumstance that he was in possession of the forged check shortly or immediately before it was feloniously passed by defendant. The state invokes an analogous rule to that which attaches to the unexplained possession of recently stolen property, and would justify the conviction on the first count on the ground that the absence of a reasonable explanation of defendant's possession of the forged check raised a presumption of fact that he forged it himself. There seems to be good authority for this, although the doctrine has not hitherto been authoritatively approved by this court. . . . From the foregoing it seems clear that the legal principle for

which the state contends is well founded, and the rule may be stated thus: Possession of a forged instrument by one who utters or seeks to utter it or otherwise to realize on it or profit by it, without a reasonable explanation of how the possessor acquired it, warrants an inference that the possessor himself committed the forgery or was a guilty accessory to its commission." (p. 448.)

See, also, *State v. Bell*, 109 Kan. 767, 201 Pac. 1110; *State v. Phares*, 120 Kan. 172, 243 Pac. 266. A person can hardly forge a check without having it in his possession for at least a brief period of time. Defendant denied that he wrote the name of Maggie Bly on the check. Maggie Bly denied that she endorsed the check by making her mark on the same, and the witnesses, Williamson and Washam, both denied that they saw her make the mark thereon. Was it necessary to prove the manual execution of the false signature by the defendant? Or does the possession of the forged instrument without a reasonable explanation raise a presumption of guilt? We think it does, and that the instruction was proper under the evidence in this case.

The suggestion that the instruction throws the burden of proof on the defendant is the most serious attack on this instruction. The instructions given fully and clearly covered all elements of the offense charged; that the law throws around the defendant the presumption of innocence, and requires the state to prove every material fact; that every presumption of law was in favor of his innocence, and that his guilt must be proven beyond a reasonable doubt.

The rule is that an instruction given to a jury must be considered in connection with all the other instructions in the case. (*State v. Millhaubt*, 144 Kan. 574, 61 P. 2d 1356.) Where it appears, as it does in this case, that the instructions taken as a whole fairly cover the issues there is no ground for complaint. An erroneous instruction may be rendered harmless by the other instructions given. (*State v. Gregory*, 74 Kan. 467, 87 Pac. 370; *State v. Killion*, 95 Kan. 371, 148 Pac. 643.) After a careful examination of the evidence in the light of all the instructions given to the jury, we do not think this one instruction was prejudicial to the defendant. (*State v. Kane*, 114 Kan. 426, 219 Pac. 281; *State v. Bolton*, 111 Kan. 577, 207 Pac. 653.) Not every error justifies reversal of a judgment. We are admonished by the statute that the error must be one which causes substantial injury to the rights of the party complaining. (G. S. 1935, 62-1718.)

Statutory presumptions throwing the burden on the defendant for an explanation are common. Thus, under G. S. 1935, 32-129, it

is provided that the possession of game birds shall be prima facie evidence that such possessor unlawfully took and killed the same. Our statute, G. S. 1935, 62-1418, provides that "in any criminal prosecution for forgery where the charge includes the falsely making and forging of a signature of another person to any written instrument, proof that such signature is not in the handwriting of the person whose signature it purports to be shall be prima facie evidence that the signing of such name was unauthorized and is a forgery."

In *Yee Hem v. U. S.*, 268 U. S. 178, 45 S. Ct. 470, 60 L. Ed. 904, the defendant was convicted of concealing a quantity of smoking opium after importation, with knowledge that it had been imported in violation of the statute. The statute provided that whenever the defendant on trial was shown to have possession of such opium, etc., "such possession shall be deemed sufficient evidence to authorize conviction unless the defendant shall explain the possession to the satisfaction of the jury." (p. 182.) The court said:

"Every accused person, of course, enters upon his trial clothed with the presumption of innocence. But that presumption may be overcome, not only by direct proof, but, in many cases, when the facts standing alone are not enough, by the additional weight of a countervailing legislative presumption. If the effect of the legislative act is to give to the facts from which the presumption is drawn an artificial value to some extent, it is no more than happens in respect of a great variety of presumptions not resting upon statute. (See *Dunlop v. United States,* 165 U. S. 486, 502-503; *Wilson v. United States,* 162 U. S. 613, 619.) In the Wilson case the accused, charged with murder, was found, soon after the homicide, in possession of property that had belonged to the dead man. This court upheld a charge of the trial court to the effect that such possession required the accused to account for it, to show that as far as he was concerned the possession was innocent and honest, and that if not so accounted for it became 'the foundation for a presumption of guilt against the defendant.' The point that the practical effect of the statute creating the presumption is to compel the accused person to be a witness against himself may be put aside with slight discussion. The statute compels nothing. It does no more than to make possession of the prohibited article prima facie evidence of guilt. It leaves the accused entirely free to testify or not as he chooses. If the accused happens to be the only repository of the facts necessary to negative the presumption arising from his possession, that is a misfortune which the statute under review does not create but which is inherent in the case. The same situation might present itself if there were no statutory presumption and a prima facie case of concealment with knowledge of unlawful importation were made by the evidence. The necessity of an explanation by the accused would be quite as compelling in that case as in this; but the constraint upon him to give testimony would arise there, as it arises here, simply from the force of circumstances and not from any form of compulsion forbidden by the constitution." (p. 184.)

In the recent case of *Morrison v. California,* 291 U. S. 82, 54 S. Ct. 281, where the court had under consideration a similar question, the limitations of the rule were stated by Cardozo, J., as follows:

"The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression. (Cf. Wigmore, Ev., vol. 5, sec. 2486, 2512, and cases cited.)" (p. 88.) See, also, *Mobile, J. & K. C. R. R. v. Turnipseed,* 219 U. S. 35, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A., n. s., 226, Ann. Cas. 1912A 463.

While this instruction is not approved as a model, we think its submission under the evidence in this case did not constitute reversible error.

Defendant next contends that he did not get a fair trial because of the attitude of the judge and the county attorney as shown by the instructions and the record in the case. We are not favored with any specific act of misconduct of the judge or county attorney at which this charge is leveled. We have just stated that the instructions are full and satisfactory and we have searched the record and find nothing therein that will sustain this charge.

Finding no material error in the record, the judgment must be and it is affirmed.