Underwood v. Quantic.

A. F. UNDERWOOD, *Appellant*, V. HENRY QUANTIC *et al.,* *Appellees.*

No. 17,122.

SYLLABUS BY THE COURT.

1. PLEADINGS—*Defective Denial—Error Cured by Other Averments.* In an action on a promissory note payable to the order of A. G. Cress it was alleged that Cress indorsed and delivered the note to the plaintiff. The answer denied that Cress indorsed and delivered the note to the plaintiff. *Held,* (1) that the denial was a limited one and raised no material issue; if the payee indorsed the note at all it amounted to an indorsement to the plaintiff; (2) that the defective denial of the indorsement was cured by other averments in the answer to the effect that the signature of A. G. Cress to the indorsement was a forgery and placed there without his knowledge or consent.

2. EVIDENCE—*Expert Testimony—Collateral Issue.* At the trial the plaintiff called a number of expert witnesses who testified that in their opinion the signature in dispute was genuine. *Held,* error to permit the witnesses on cross-examination to be asked their opinion as to the genuineness of several pur-

ported signatures of the same person, and afterward to permit testimony to be offered showing that some of the purported signatures were false. (*Gaunt v. Harkness*, 53 Kan. 405.)

3. ———— *Collateral Issue—Error Cured by Special Findings.* In permitting testimony of such collateral issue it is held in this case not to have been prejudicial because of certain findings of the jury to the effect that the transfer of the note to the plaintiff was not made in good faith, that the note was procured by false and fraudulent representations, and that the consideration for which it purported to be given failed.

4. INSTRUCTIONS—*Sufficiency.* Instructions considered, and *held* that those given covered all the issues and that the court committed no error in refusing the instructions requested.

Appeal from Shawnee district court. Opinion filed June 10, 1911. Affirmed.

*George E. Stoker,* and *John W. Newell,* for the appellant.

*Robert J. Brock,* for the appellees; *Lee Monroe, W. S. Roark,* and *Carr W. Taylor,* of counsel.

The opinion of the court was delivered by

PORTER, J.: This is an action on a promissory note for $4000 with interest from April 8, 1903. The note was executed by Henry Quantic, payable to the order of A. G. Cress, and the petition contained an allegation that before maturity and for value defendant Cress indorsed and delivered the note to the plaintiff. The answer set up various defenses, including a failure of consideration, that the plaintiff was not the holder in due course, and denied the indorsement of the note by Cress. The jury made a number of special findings and returned a verdict in favor of the defendants. The plaintiff appeals.

The first contention is that the defense that Cress did not indorse the note was not sufficiently pleaded. The answer denied that before the maturity of the note and for value A. G. Cress indorsed and delivered the

note to the plaintiff. Standing alone, the denial of the indorsement would not be sufficient. It is a limited denial and only raises an issue as to whether Cress indorsed and delivered the note to the plaintiff, which is not material. (*Foote v. Sprague,* 13 Kan. 155.) If he indorsed it at all, it amounted to an indorsement to the plaintiff. An examination of the entire answer, however, shows that the defective denial was cured by other averments, another paragraph of the answer reading as follows:

"Defendant further alleges that the plaintiff, A. F. Underwood, now claims to have possession of said note and claims to be the owner and holder thereof by indorsement and delivery, but this defendant charges that said note was never indorsed by said A. G. Cress, and that the signature upon said note purporting to be the signature of said A. G. Cress is a forgery and was placed there without his knowledge or consent and without the knowledge and consent of this defendant."

A similar objection is made to the verification of the answer. In one place the verification denies that A. G. Cress indorsed the note or delivered the same to the plaintiff, but this is likewise cured by another statement in the verification that the indorsement of Cress is a forgery and that "the same was not placed thereon by this defendant or anyone authorized by him so to do." The answer and the verification must therefore be regarded as containing sufficient denials of the indorsement of the note by Cress. At the time the answer was originally drawn it was intended to be the separate answer of defendant Quantic; but afterward it was altered by interlineations so as to read "Separate answer of Henry Quantic & A. G. Cress." Originally it was signed by Robert J. Brock, attorney for defendant Henry Quantic. It was never signed by anyone as attorney for A. G. Cress, nor was it signed by Cress himself, but the answer was verified by him and described him as a defendant. It is contended that this

was not the answer of A. G. Cress. The abstract fails to show affirmatively that this question was raised in the court below. Had it been, the court would have permitted the pleading to be properly signed, either before or after the verdict. It appears to have been treated as the answer of both defendants; no attempt was made to take judgment by default against Cress, and it is too late now to raise the technical objection.

The jury returned a finding that the note had never been indorsed by Cress and that his indorsement thereon was a forgery, but it is claimed that there was material error in the admission of testimony with respect to this defense. The plaintiff called a number of expert witnesses who testified that in their opinion the indorsement of Cress was genuine. The court permitted the attorney for the defendants, in cross-examination of these witnesses, to ask them concerning the genuineness of several signatures of Cress written on a sheet of paper, and afterward permitted the attorney to testify that some of these signatures were written by himself. This brought into the case a collateral issue and was error. The precise point was decided in *Gaunt v. Harkness,* 53 Kan. 405, where the question is discussed, and this manner of cross-examining expert witnesses respecting the genuineness of a signature was held to be reversible error. The error is conceded, but the contention is that it can not be regarded as prejudicial because of the other findings. In answer to special questions submitted by the defendants, the jury returned the following findings:

"FINDINGS OF FACT.

"(1) Ques. Did the defendant, A. G. Cress, indorse the note in suit by writing his name upon the back of it? Ans. No.

"(2) Q. Did the defendant, A. G. Cress, ever have the note in suit in his possession, and, if so, did he deliver it to the Ashurst Oil, Land and Development Company, or any of its officers or agents? A. No.

Underwood v. Quantic.

"(4)   Q. Did the Ashurst Oil, Land and Development Company transfer the note in suit to Youle, and, if so, was this transfer in good faith and for a valuable consideration? A. Transferred, but not in good faith in our judgment.

"(5)   Q. Did Youle transfer the note in suit to plaintiff, A. F. Underwood, and, if so, was the transfer in good faith and for a valuable consideration? A. He transferred the note, but in our judgment not in good faith.

"(6)   Q. Was the defendant, Henry Quantic, induced to sign the note in suit through the false and fraudulent representations of the Ashurst Oil, Land and Development Company, or its agents or officers? A. Was induced to sign note by the representations and agreement given by Mr. Abrams to the effect that upon investigation the holdings of the Ashurst Oil, Land and Development Company were satisfactory.

"(7)   Q. Was the note in suit ever delivered by Mr. Cress? A. No.

"(8)   Q. At the time of the signing of the note by Quantic, was the agreement between himself and Abrams, the representative of this oil company, that the note should be placed in the hands of Cress and held by him until Quantic should have an opportunity to investigate the oil fields of this oil company and its holdings for the purpose of determining whether he was satisfied with the deal, and if not satisfied that he should have a right to take up his note? A. Yes.

"(9)   Q. Did Quantic make an examination of the oil fields and holdings of this company, and was he dissatisfied and demanded his note back from the oil company? A. Yes.

"(10)   Q. At the time of the purported transfer of said note from Youle to Underwood was Underwood acting in good faith? A. No."

The findings in answer to questions submitted by the plaintiff are not in conflict with the foregoing. If it be conceded that the indorsement of Cress was genuine and that finding No. 1 should be stricken out, the defendants would be entitled to judgment upon the other findings, which are to the effect that the transfer of the note to Underwood was not made in good faith,

that the note was procured by false and fraudulent representations, that it was never in the possession of Cress and never was delivered by him, and that the consideration for which it purported to be given failed.

There remains only the question whether the court committed error in instructing the jury. The plaintiff requested sixteen instructions, all of which were refused. The instructions given covered all the issues, but it is contended that the court should have given an instruction as to what is meant by good faith and bad faith. While the court did not define the meaning of these terms, the jury were instructed if they found from the evidence that the plaintiff became the owner of the note for a valuable consideration before maturity and without knowledge of the alleged infirmities, the plaintiff would be entitled to recover unless one or more of the defenses set up were proven to their satisfaction. They were also instructed that any notice that Underwood might have acquired subsequent to the date he obtained the note respecting the circumstances under which it was executed would not affect his right to recover. In another instruction the court explained that the acceptance by the plaintiff of the note was not in good faith if it appeared from the evidence that it was a scheme on the part of the plaintiff, Youle and the officers of the oil company for the purpose of getting the note out of the hands of the oil company and Youle and into the hands of the plaintiff for the sole purpose of enforcing the collection of the same. There was a further instruction that it was unnecessary for the defendants to show that the plaintiff had actual notice of the fraud, and that the fact might be shown by circumstantial evidence, but that the jury must be satisfied from the facts and circumstances proven that the plaintiff did have actual notice of the alleged fraud and misrepresentation. These instructions sufficiently covered the question of good or bad faith and there was no error in refusing the instruction asked. Instruction

No. 8 requested by the plaintiff related to the presumptions as to good faith and the shifting of the burden of proof, and while it might have been given we see no error in the refusal of it. There was no error in refusing instruction No. 15 requested by the plaintiff. There was no claim that the plaintiff paid actual money for the note, and the jury understood that the transfer of his stock of merchandise was a valuable consideration. Nor was it necessary for the court to instruct the jury that an agreement on the part of Youle to perform services in the future for the Ashurst oil company constituted a valuable consideration for the indorsement of the note to him. The finding that the transfer by the Ashurst company to Youle was not in good faith made it wholly immaterial what the consideration may have been.

We find no error in the instructions, and upon the findings of fact the judgment is affirmed.