McARTHUR et al. v. CITIZENS' BANK OF NORFOLK, VA.

(Circuit Court of Appeals, Fourth Circuit. May 4, 1915.)

No. 1321.

1. EVIDENCE ⬧129—SIMILAR TRANSACTIONS—INDORSEMENT OF NOTE.
   In an action against alleged indorsers of a note, defended on the ground that their indorsements were not genuine, evidence that plaintiff took a nonsuit as to another indorser, and a question asked plaintiff's cashier as to whether it did so because it became convinced that such indorser did not sign the note, were properly excluded; the cashier having expressed no opinion as to the genuineness of defendants' alleged signatures.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 388–393, 395–398; Dec. Dig. ⬧129.]

2. BILLS AND NOTES ⬧502—ACTIONS—EVIDENCE.
   In an action against the mother-in-law and a brother-in-law of the president of a corporation on their alleged indorsements of the corporation's note, which they claimed were not genuine, evidence as to the relations between defendants and such president at the time of the trial and "in the last few months" was properly excluded, the note having been negotiated 15 months before the trial, since, even though their relations subsequently became unfriendly, this would not tend to show that the disputed signatures were not genuine.

   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1708–1716; Dec. Dig. ⬧502.]

3. APPEAL AND ERROR ⬧1048—WITNESSES ⬧268—CROSS-EXAMINATION—SCOPE.
   The defendant in an action was cross-examined at some length without objection concerning his property interests and various suits and judgments against him, and among the matters inquired into were his transaction with W., who he said was not of kin to him, though he married W.'s niece. He was further asked whether two of his brothers married daughters of W., and whether he consulted his brother about buying an orange grove. Held, that the admission of these questions was not error, and, even though technically incorrect, the error was clearly inconsequential.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140–4145, 4151, 4158–4160; Dec. Dig. ⬧1048; Witnesses, Cent. Dig. §§ 931–948, 959; Dec. Dig. ⬧268.

   Cross-examination of witnesses to show interest or bias, see note to Ammerman v. United States, 108 C. C. A. 7.]

4. TRIAL ⬧27—DEMONSTRATIONS AND EXPERIMENTS—IMITATION OF HANDWRITINGS.
   In an action involving the genuineness of alleged indorsements of a note, it was not error to refuse to permit an expert engraver to reproduce

⬧For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by freehand drawing the signatures of the defendants in the presence of the jury, for the purpose of showing that they were easily imitated.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 76; Dec. Dig. ☜27.]

5. EVIDENCE ☜567 — EXPERTS ON HANDWRITING — CROSS-EXAMINATION — SCOPE—DISCRETION OF COURT.

Where, in an action involving the genuineness of alleged indorsements on a note, a large number of witnesses on the subject of handwriting had been called, and no such test had been suggested in connection with the testimony of previous witnesses, it was within the court's discretion to refuse to permit defendants, in cross-examining almost the last witness called, to test his ability as an expert by submitting genuine and imitated signatures, and asking him to pick out those that were genuine and those that were spurious.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2391; Dec. Dig. ☜567.]

6. EVIDENCE ☜567—EXPERT TESTIMONY—CROSS-EXAMINATION OF EXPERTS.

Such evidence was properly excluded as incompetent, as a witness may compare the disputed signature only with other signatures which are admitted or proven to be genuine.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2391; Dec. Dig. ☜567.]

7. EVIDENCE ☜179—DOCUMENTARY EVIDENCE.

In an action on alleged indorsements of a corporation's note, held by a Norfolk bank, defended on the ground that the indorsements were not genuine, a witness testified that one of the defendants asked him to find out how much paper he and his mother and sister were on, and whether $50,000 would relieve them from liability, and that the "Norfolk paper" was referred to; that he took the matter up with the cashier of a Raleigh bank, and received from him a letter to such defendant, which he delivered to him. Such defendant, when called upon to produce the letter, denied receiving it, and the witness then testified that a letter from the cashier to him contained the substance of the letter to defendant. *Held*, that such letter was properly admitted, as against the defendant in question, especially as the contents of it had been fully stated by the witness.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 595–599; Dec. Dig. ☜179.]

8. EVIDENCE ☜213—EFFORT TO COMPROMISE.

The facts did not bring the evidence within the doctrine of privilege relative to a proposed compromise.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 745–751, 753; Dec. Dig. ☜213.]

9. APPEAL AND ERROR ☜1051—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action on a note, in which defendant denied indorsing the note, he was cross-examined without objection concerning other suits against him, in which he denied his liability under oath, and the papers containing such denials were read to him in full in connection with the examination. *Held* that, the contents of the papers having thereby been fully disclosed, he was not harmed by the admission of the papers themselves in evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. ☜1051.]

In Error to the District Court of the United States for the Eastern District of North Carolina, at Raleigh; Henry G. Connor, Judge.

Action by the Citizens' Bank of Norfolk, Va., against Adam Mc-

Arthur and another.   Judgment for plaintiff, and defendants bring error.   Affirmed.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

J. A. MacLean, Jr., of Fayetteville, N. C., and L. R. Varser, of Lumberton, N. C. (Shaw & MacLean, of Fayetteville, N. C., James H. Pou, of Raleigh, N. C., and McLean, Varser & McLean, of Lumberton, N. C., on the brief), for plaintiffs in error.

J. Crawford Biggs, of Raleigh, N. C. (Winston & Biggs, of Raleigh, N. C., on the brief), for defendant in error.

KNAPP, Circuit Judge.   The plaintiffs in error (defendants below and hereinafter so called) were sued as indorsers of a promissory note for $25,000 executed by the Newton-McArthur Lumber Company, a North Carolina corporation, under date of March 14, 1913, and payable four months thereafter, which the defendant in error (plaintiff below) discounted in the ordinary course of business.   They deny indorsing the note, and the genuineness of their signatures was the sole question submitted to the jury.   The trial occupied a full week, a great number of witnesses being sworn, and resulted in a verdict that the note was in fact indorsed by defendants.   Judgment was entered against them accordingly, and the case comes here upon assignments of error which will be briefly examined in this opinion.   They will be taken up in the order in which they are discussed in the briefs of counsel.

[1] 1. The note in question was also indorsed by J. Sprunt Newton, president of the corporation maker, and by Mrs. Eliza Newton, his wife, who is a daughter of the defendant Mrs. M. C. McArthur.   The defendant Adam McArthur is her son.   The suit was against all four of the indorsers, but J. Sprunt Newton suffered default and the plaintiff at a previous term submitted to a judgment of nonsuit as to Mrs. Newton.   On the cross-examination of plaintiff's cashier the defendants' counsel asked the witness if his bank did not take a nonsuit as to her because it became convinced that she did not sign the note, and later in the trial he offered the judgment of nonsuit.   The evidence was excluded.

We are of opinion that this ruling is not open to objection.   The bank had the right to sue one or more of the indorsers, and the fact that it took a nonsuit as to Mrs. Newton, whether for the reason implied in the question of counsel or otherwise, had no legitimate bearing upon the issue submitted to the jury, namely, whether the note in suit was indorsed by Adam McArthur and his mother.   Moreover, the question involved indirectly the opinion of the witness as to the genuineness of the signature of an indorser against whom the bank was not then proceeding.   But he knew nothing about any of the signatures in dispute, and had not undertaken to express any opinion as to their genuineness, and it was immaterial whether he thought that Mrs. Newton did or did not indorse the note.   It also appears of record that at least one reason why the bank submitted to the nonsuit was that the court at a previous term had refused to allow an amendment of the complaint to the effect that Mrs. Newton had adopted or ratified her

alleged indorsement. It seems clear to us that the offered evidence was properly rejected.

[2] 2. It is claimed that the trial court erred in refusing to allow the defendant Adam McArthur, as a witness in his own behalf, to answer questions as to what were the relations between himself and his mother on the one part, and J. Sprunt Newton, "now"—that is, at the time of the trial—and "in the last few months."

We are quite unable to see any error in the exclusion of this testimony. Newton had indorsed the note and procured its discount by the plaintiff, but neither side saw fit to call him as a witness. The note was negotiated some 15 months before the trial, and there is no suggestion that the relations between these parties were not entirely friendly at that time. If they subsequently became unfriendly, as the questions might imply, the fact in no way tended to show that the disputed signatures were not genuine.

[3] 3. It is alleged that the court below erred in allowing plaintiff's counsel to ask Adam McArthur whether two of his brothers married two of N. G. Wade's daughters, and in allowing him to ask the witness whether he consulted his brother Dan about buying an orange grove in Florida. It appears from the record that the witness had been interrogated at some length without objection concerning his property interests and the various suits and judgments against him. Among the matters inquired into were his transactions with Wade, who he said was not of kin to him, although he married his niece.

Even if it be conceded that the allowance of these questions was technically incorrect, though we think otherwise, the answers were harmless, and the error so clearly inconsequential as not to be worthy of discussion.

[4] 4. One of the defendants' witnesses was an expert in steel and copperplate engraving, who testified that he had been reproducing autographs for a number of years and could make a fac simile of a "comparatively easy signature" by free-hand drawing, and who stated that the signatures in dispute were of that class. He was then asked if he was prepared to reproduce by free-hand the signatures of the defendants, and if he would do so in the presence of the jury. The stated purpose of this request was to show that the signatures in question were easily imitated, and that it was desired to have this demonstrated by an actual performance to be submitted to the jury in connection with the witness' testimony. The trial court refused to allow the demonstration.

Upon principle and authority it seems clear to us that the ruling should be upheld. The ability of this expert to counterfeit the disputed signatures did not tend to show that they were not genuine. As an exhibition of skill the proposed performance might have been interesting, but we fail to see how it could aid the jury in deciding whether the note in suit was indorsed by the defendants. None of the cases cited by defendants' counsel sustains his contention, as will be readily seen upon examination, while decisions directly in point are to the contrary effect. Thomas v. State, 18 Tex. App. 213; Holmes v. Goldsmith, 147 U. S. 150, 13 Sup. Ct. 288, 37 L. Ed. 118.

[5, 6] 5. It is insisted that the court below erred in refusing to permit the defendants to test the ability as an expert in handwriting of the plaintiff's witness Ramsey, by submitting to him both genuine and imitated signatures of the defendants and asking him to pick out those that were genuine and those that were spurious.

It would be sufficient to sustain the refusal as a matter of discretion under the circumstances existing at that stage of the trial. This witness was called in rebuttal, and was almost the last of a large number of witnesses on the subject of handwriting. No test of this sort had been suggested in connection with the testimony of any previous witness on either side, and it can hardly be said in reason that the ruling, as the case then stood, was not clearly within the discretion of the trial court. Assuming that the witness would have failed in one or more instances to distinguish the true from the false, the effect would have been negligible, in view of the mass of testimony which had already been submitted. Moreover, if the defendants had been allowed to test the witness in this way, the plaintiff could well have claimed the right to recall the defendants' witnesses of the same class for the purpose of subjecting them to a like test, and the trial would have been indefinitely prolonged. In the nature of the case a considerable latitude of discretion must be allowed in respect of cross-examination, and we have no hesitation in holding that it was a proper exercise of discretion to reject the test proposed, when the question had not been raised with any previous witness and the evidence was brought nearly to a close.

But we are also of opinion that the evidence was properly excluded as incompetent. We are satisfied that the law is well settled, or at least that the clear weight of authority is to the effect, that a witness in a case like this is permitted to compare the disputed signature only with other signatures which are admitted or proven to be genuine. This question has been thoroughly discussed by the Supreme Court of North Carolina in a recent opinion which sustains fully the ruling here under consideration. Fourth National Bank of Fayetteville, Appellant, v. Adam McArthur et al. (N. C.) 84 S. E. 39, August term, 1914. Other authorities to the same purport are: Hickory v. U. S., 151 U. S. 303, 14 Sup. Ct. 334, 38 L. Ed. 170; People v. Patrick, 182 N. Y. 176, 74 N. E. 843; Wilmington Savings Bank v. Waste, 76 Vt. 331;[1] Bacon v. Williams, 13 Gray (Mass.) 525; Gaunt v. Harkness, 53 Kan. 405, 36 Pac. 739, 42 Am. St. Rep. 297; Andrews v. Hayden, 88 Ky. 455, 11 S. W. 428; State v. Griswold, 67 Conn. 290, 34 Atl. 1046, 33 L. R. A. 227.

[7, 8] 6. The further contention is made that it was error to allow W. M. Walker, a witness for the plaintiff, to identify a certain letter purporting to have been written to him by one W. B. Drake, cashier of the Merchants' National Bank of Raleigh, which appears to have held some of the McArthur paper, and to state that it contained the substance of a letter from Drake to Adam McArthur, and that it was also error to allow this letter to be introduced.

Walker had testified at some length to conversations with Adam McArthur, in which the latter had asked him, as he asserted, to find out how much paper he and his mother and sister were on, and whether $50,000 would relieve them from liability. He averred that McArthur

[1] 57 Atl. 241.

in these conversations had referred to the "Norfolk paper," and as the note in suit was the only one held in Norfolk the alleged reference to it by McArthur tended to show an admission on his part that he had indorsed it. Walker took the matter up with Drake, and received from him a letter to McArthur, which he said he delivered in person. The latter was called upon to produce it, but denied that he had ever received such a letter. In view of this denial, the letter in question, which Walker said contained the "same proposition," was allowed in corroboration of his testimony. The court carefully pointed out that this evidence was not competent as against Mrs. McArthur, and that it was admitted solely as affecting Adam McArthur. Under the circumstances, we are of opinion that the letter was admissible for the purpose stated, and that the objection to its introduction is without substantial merit. Moreover, we are unable to see that this defendant was prejudiced by the admission of a letter the contents of which had been fully stated by the witness.

The point is also made that the evidence of Walker should have been excluded because it pertained to a proposed compromise, but we are satisfied that the doctrine of privilege does not apply to the facts of this case and cannot be invoked to support the contention.

[9] 7. On his cross-examination as a witness in his own behalf Adam McArthur was interrogated at length and without objection concerning a suit brought against him by the American National Bank, in which he allowed a judgment to be taken against him because, as he said, he was without money to contest the case, although he had denied under oath his liability for the debt on which he was sued. It was also brought out that he had been sued by the Bank of Commerce & Trusts of Richmond as guarantor of certain bonds of the Newton-McArthur Lumber Company, that judgment was taken against him by default, that he made an affidavit for the purpose of opening the default and later filed a verified answer, in both of which he denied that he had signed the bonds in question, although he afterwards admitted that he had done so. The record indicates that these papers were read to him in full in connection with his examination concerning the transactions to which they referred, but error is alleged because they were allowed in evidence.

As McArthur had denied indorsing the note in suit, the obvious purpose of this examination was to discredit him as a witness, and that the inquiries addressed to him were legitimate for that purpose is not questioned. The objection raised goes only to the ruling which permitted the documents themselves to be put in evidence. In view of the extent to which this line of inquiry had gone without objection, with the result that the contents of these papers were already known to the jury, it seems plain to us that he has no just ground of complaint because they were included in the record. The verified statements made by him in these other suits had been fully disclosed, apparently with the consent of his counsel, and it is impossible to see how he was harmed by putting the documents in evidence. A careful review of this feature of the trial convinces us that no reversible error can be predicated upon the ruling here considered.

223 F.—64

8. The remaining assignments are based upon objections to the charge delivered to the jury. We are satisfied after thorough examination that none of these exceptions presents a question of substantial merit, and it would serve no useful purpose to discuss them in detail. The charge was a full and adequate presentation of the case, which failed in no respect to state with clearness and impartiality the contentions of the respective parties. In its specific references to the testimony, as well as in its general tenor, it was quite as favorable to the defendants, in our estimation, as the evidence warranted. In a word, it was an elaborate and unbiased review which clearly explained to the jury the question for them to determine, and called their attention with judicial fairness to the proofs and arguments on both sides; and we fail to find anything said or omitted which could mislead their deliberations or improperly influence their decision.

The record discloses no ground for reversal, and the judgment will therefore be affirmed.