No. 34,727

THE STATE OF KANSAS, *Appellee*, v. HOWARD B. MAXWELL, *Appellant*.

(102 P. 2d 109)

Opinion filed May 4, 1940.

*A. J. Herrod* and *C. W. Trickett,* both of Kansas City, for the appellant.

*Jay S. Parker,* attorney general, *A. B. Mitchell,* assistant attorney general, *Arthur J. Stanley, Jr.,* county attorney, and *Martin C. Crawn,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action in which defendant was charged with forging the signature, that is, the endorsement of the name of the payee on each of four checks, and with uttering three of them. The defendant, Howard B. Maxwell, was convicted on all seven counts and the sentences were made to run concurrently. He appeals from the conviction on each count.

Defendant, at the times in question, was the chief deputy clerk, and Pal E. Bush was the clerk of the district court of Wyandotte county. The regular form check of the clerk of the district court was employed in each instance. In the upper and left side of the check appeared in bold type the name of "Pal E. Bush." Immediately thereunder and in smaller type next appeared the words "Clerk of the District Court." Under those words, in somewhat smaller type, appeared the words "Wyandotte county, Kansas." In the lower right-hand corner the signature arrangement for the maker of the check was as follows:

> "PAL E. BUSH,
> Clerk of the District Court
> By----------------------------------------"

Across the extreme left end and on the face of the check appeared the following: "This check is issued in full payment of account shown hereon and payee accepts it as such by endorsement hereof."

Immediately under that statement, lines were drawn on which were to be inserted the case number out of which the particular

check was issued and the nature of the check, that is, whether for refund, award, judgment, etc.

The names of the payees on the four checks, the endorsement of which defendant was charged with forging, were "Henry Caldwell," "Henry Klamm," "Mary E. Jackson or Mary E. Jacksen" and "Sylvia Reimer." The count which charged uttering of the Jackson or Jacksen check was ordered stricken from the amended information on the motion of the defendant to quash that information.

The statement of a few additional facts, not intended as a full statement of the evidence, but only to assist the reader in obtaining a better general understanding of the background of the charges, will be helpful. Appellant served as chief deputy clerk continuously from January, 1933, to May 26, 1937, when he was arrested. There was evidence that during that period only the clerk, Pal E. Bush, and appellant were authorized to sign checks disbursing money out of the funds in the official custody of the clerk. It was also a custom of the office to accommodate payees of official checks issued out of the clerk's office by O. K.'ing the checks in order that they might be cashed in the office of the county treasurer. In such cases of accommodation the person approving the check placed on the back thereof the letters "O. K." and his name or initials. The cashier in the treasurer's office did not cash checks which did not bear such identifying and approving signatures.

One of the cases pending in the district court of Wyandotte county during the period in question was case No. 32575-A, *Alber et al. v. City of Kansas City, Kan.*, commonly known as the Fairfax sewer-tax case. One of the plaintiffs in that case was J. Henry Caldwell. After the trial of that case there had been paid into the clerk's hands, to the credit of Caldwell, the sum of money out of which Caldwell was entitled to receive payment of $12.13 and $29.14, respectively. These amounts had been paid to his attorney in December of 1934 and January of 1935. There was no additional money due to Caldwell. On February 15, 1936, one of the checks involved in the instant case was drawn on the account of the clerk, bearing the case number, payable to Henry Caldwell, in the amount of $228.87. That check was signed by the appellant, "Howard B. Maxwell, Dpy." That check was endorsed "Henry Caldwell" by the appellant and was O. K.'d by Margaret Reiling, clerk in the office of the clerk of the district court, who cashed the check in the county treasurer's office and gave the money to appellant.

There was also pending in the district court a state highway condemnation case bearing No. 49281-A. One of the owners of property affected by that action was Henry Klamm. On October 14, 1935, a check was made payable to him and Grace Klamm, his wife, in the total amount due him, in the sum of $141. On March 27, 1936, another check in the amount of $141, bearing the proper case number, and payable to Henry Klamm, was drawn on the account of the clerk of the district court. It was likewise signed by appellant as follows: "Howard B. Maxwell, Dpy." That check bears an endorsement purporting to be that of Henry Klamm as payee, and the notation thereunder of "O. K. H. B. M." The check was cashed at the office of the county treasurer. The endorsement was not in the handwriting of Henry Klamm. It was the opinion of J. C. Shearman, handwriting expert, that the endorsement was written by the appellant.

There was also pending in the district court case No. 50703-A, another state highway condemnation case. At no place in the records pertaining to that case does anyone named Jackson or Jacksen appear. The appraiser's report, which discloses the names of all persons owning or having an interest in the tracts of land involved, shows no person by the name of Jackson or Jacksen as an owner or lien owner. On June 19, 1936, a check was executed, signed "Pal E. Bush," bearing the proper case number, payable to Mary E. Jackson or Mary E. Jacksen, in the amount of $193.45. On the reverse side of the check there appears the signature or endorsement of "Mary E. Jackson" or "Mary E. Jacksen," and the notation "O. K. H. B. M." The check was cashed in the county treasurer's office. It was the opinion of J. C. Shearman, handwriting expert, that appellant wrote the endorsement.

There was likewise pending in the district court a case entitled *"Sylvia Rieman v. The Ottawa Transfer and Storage Company,* No. 52153-A. On April 17, 1937, the defendant paid the judgment against it by a check made payable to Williamson, Cubbison & Vaughan, in the amount of $546.50. A receipt was given for that check by Blake A. Williamson, one of plaintiff's attorneys. No other person was entitled to receive any money by reason of the judgment in that case. On April 22, 1937, five days after the payment of that judgment, appellant signed a check, bearing the proper case number, payable to "Sylvia Reimer," in the amount of $546.50. The check bears the purported signature or endorsement of the

payee, "Sylvia *Reimer,*" and the notation "O. K. H. B. Maxwell." A state's witness by the name of Wash Brown, then a cashier in the county treasurer's office, testified, in substance, that appellant had presented the check to him late in the evening and that he (Brown) did not have sufficient cash on hand to pay the entire amount of the check, but that he gave appellant $50 at that time and that the next morning appellant returned to the treasurer's office and received the remaining $496.50.

The signature or endorsement of the name of the payee on the "Jackson" or "Jacksen" forgery count presents a question touching the forgery of the name of a fictitious person. The contention of the state is, that there was no person by the name of Mary E. Jackson or Mary E. Jacksen involved in the highway condemnation case. That question will be treated later. It is also the contention of the state that there was no person by the name of Sylvia *Reimer* involved in the case against the Ottawa Transfer and Storage Company. It will suffice, at this time, to say that neither Henry Caldwell, Henry Klamm nor Sylvia Rieman had ever authorized appellant to sign their names as endorsers on any checks. We may also state now that in the regular course of handling the business of the clerk's office all payments out of the clerk's funds were recorded by entries upon the proper appearance docket pages and that the appearance docket discloses no entries showing the payment of money by means of any of the checks bearing the alleged forged endorsements.

Appellant contends the amended information was bad for duplicity. The information charged defendant did "falsely make, forge and counterfeit a certain false and forged writing, signature and endorsement purporting to be the writing, signature and endorsement of" each of the people in the four checks involved. The uttering counts charged defendant with passing, uttering and publishing as true, a certain forged and counterfeit writing, signature and endorsement of one ———. Appellant contends the information is bad for duplicity because it charges the defendant with making, with forging and with counterfeiting. The contention is not well taken, (1 Brill's Cyclopedia Criminal Law 989, § 587; *State v. Murphy,* 17 R. I. 698, 704-705; *United States v. Howell,* 11 Wall. [78 U. S.] 432, 20 L. Ed. 195; *State v. Hewes,* 60 Kan. 765, 57 Pac. 959; *State v. Johnson,* 85 Kan. 54, 116 Pac. 210; *State v. Finney,* 141 Kan. 12, 29, 40 P. 2d 411. See, also, *State v. Carr,* 151 Kan. 36, 48, 98 P. 2d 393.)

It is further urged defendant could not tell whether he was charged with forging the face of the check, the signature of the payee, or the endorsement, or all three. The contention is too technical. We think it was sufficiently clear from the information as a whole that the writing or signature complained of was the endorsement of the name of the payees on the respective checks. In addition to the language above quoted, the state set forth in the information the endorsement and the notations contained on the reverse side of the check. It is true the face of the check was likewise set out in full. That appears to have been done in order that it might clearly appear from the instrument itself that the name of the endorsee appearing on the reverse side of the check was the same as the name of the payee which appeared on the face of the check. The fact the face of the check also revealed or tended to reveal other facts did not prevent the state from incorporating the face of the check in the information.

Appellant insists his counsel was unduly restricted in examining the jurors on their *voir dire*. He desired to ascertain the political and religious faith of the jurors. Pal E. Bush, the clerk of the district court and a state's witness, was a Catholic and appellant was a Protestant. Shortages had appeared in the office of the clerk of the district court in the sum of approximately $2,000, which Bush had paid to the county during the process of an audit of his office accounts. Appellant asserts he was entitled to ascertain the facts concerning the religious or political faith of the jurors, in order to determine whether he would exercise his right of peremptory challenge. In support of the right to interrogate jurors in order to determine whether a peremptory challenge will be exercised, appellant relies upon decisions from some other jurisdictions and upon the case of *Swift v. Platte,* 68 Kan. 1, 72 Pac. 271. Upon a rehearing in that case the right to interrogate jurors for the purpose of ascertaining the existence of bias or prejudice, with a view of exercising the right of peremptory challenge, was recognized, but it was held the extent of such examination must be left largely to the discretion of the trial court. It was therefore held that unless an abuse of discretion is clearly shown, this court will not interfere. (*Swift v. Platte,* 68 Kan. 10, 74 Pac. 635.) In the instant case counsel for defendant was permitted to inquire, in substance, whether, for any political or religious reason, the juror felt he could not serve as a fair and impartial juror, or whether, by reason of his religion or politics, he could not give

this defendant a fair and impartial trial. It nowhere appears from the record on motion for a new trial or otherwise, nor is it now contended the right of peremptory challenge would have been exercised if the proposed interrogatories had been permitted. Complaint concerning the ruling does not appear in the specifications of error. It does not affirmatively appear the attention of the trial court was directed to the complaint on motion for a new trial. It is not now contended the ruling prejudiced or in reality affected any substantial right of the defendant. G. S. 1935, 62-1718, provides:

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

See, also, *State v. Finney*, 141 Kan. 12, 30, 40 P. 2d 411. In view of the record, the complaint does not constitute ground for reversal.

It is urged the judgment should be set aside for the reason appellant was not present at all stages of the trial. Before the second trial began, appellant lodged a motion to quash the amended information and a plea in abatement. The arguments thereon were heard in the chambers of the trial court. Appellant, a young lawyer, was at liberty on bail and remained in the courtroom. The formal rulings on the motion and plea were made in the courtroom and in his presence. Later in the course of the trial, an argument was heard in chambers concerning the competency of evidence elicited on cross-examination of a state's witness by counsel for appellant. The evidence had been admitted the previous day. The trial court, during this conference, concluded it had improperly admitted the evidence. In the course of that argument the court observed appellant had not come into his chambers and promptly requested that he be brought in. The former proceedings of that conference were then read to appellant. The court also inquired of counsel for appellant whether he desired to have his offers of exhibits read to the appellant. Counsel for appellant said he did not desire to have them read. Appellant did not ask to have them read. The formal ruling on the question then in controversy was likewise made in the courtroom and in the presence of the appellant. Section 10 of our bill of rights provides:

"In all prosecutions, the accused shall be allowed to appear and defend in person, or by counsel; . . ."

G. S. 1935, 62-1411, reads:

"No person indicted or informed against for a felony can be tried unless he be personally present during the trial; nor can any person indicted or informed

against for any other offense be tried unless he be present, either personally or by his counsel."

Appellant was charged with a felony and we are reminded the hearing on a motion to quash an information in a prosecution for a felony is a part of the trial and that a defendant must be personally present in court at such hearing. (*State v. Clifton,* 57 Kan. 448, 46 Pac. 715.) In that case the motion was argued while the defendant was in confinement in the county jail. In the instant case appellant was at liberty on bail. Nothing prevented him from accompanying his counsel for the conferences in chambers. There is not the slightest evidence he was not allowed to be present by the court or that he was otherwise prevented from entering the conferences at any and all times. It is also contended counsel could not waive the right of the defendant to be present. (*State v. Myrick,* 38 Kan. 238, 16 Pac. 330.) In that case the court gave additional instructions to the jury while the defendant was under confinement in jail. In *State v. Fry,* 131 Kan. 277, 291 Pac. 782, it was said:

"The second assignment of error is for the abuse of discretion in permitting the trial to proceed in the absence of the defendant. The record shows that the court interrupted the progress of the trial to inquire of the counsel for the defendant if he had sent the defendant out of the courtroom, and if he was raising any objection on that account. The attorney answered he was raising no objection and that he had sent him out to call his witnesses. The defendant was at liberty on his bond and could go out and in at his pleasure, and where a defendant voluntarily leaves the courtroom during the trial it will not nullify the proceedings nor impair the validity of the verdict. (*State v. Thurston,* 77 Kan. 522, 94 Pac. 1011; *State v. Bland,* 91 Kan. 160, 136 Pac. 947.)" (p. 278.)

The fundamental issue here, however, is not only one of waiver by appellant's counsel, but a question of appellant's own waiver of his right to be present at the hearings. That a defendant may waive his right to be present by failure to take advantage of the privilege, when at liberty on bond, is well established. A few of the circumstances under which the rule has been applied are illustrated in *State v. Adams,* 20 Kan. 311; *State v. Way,* 76 Kan. 928, 93 Pac. 159; *State v. Thurston,* 77 Kan. 522, 94 Pac. 1011; *State v. Stratton,* 103 Kan. 226, 173 Pac. 300; *State v. Fry,* supra; *State v. Zakoura,* 145 Kan. 804, 813, 68 P. 2d 11. It is suggested only counsel for the respective parties were requested to come into the court's private chambers and that the door into his chambers was thereafter closed. All lawyers know how such invitations by the trial court are made. Manifestly, the attorneys were the persons to participate in the ac-

tual argument. There was, however, nothing in the invitation which even remotely indicated, or which reasonably could be construed to indicate, that appellant was not to be present. The conduct of the court when it observed appellant was absent completely refutes any other interpretation of his invitations to make the arguments in chambers. Neither the bill of rights nor the statute requires that a defendant be compelled to attend. The door was never locked. The attorneys went in and out of the chambers at will. Appellant might have done likewise. Although appellant had not entered the conference in which the competency of evidence was involved, the court offered to have all that transpired in that conference read to him. That was not deemed necessary by appellant's counsel nor, apparently, by the appellant himself. The offer was not accepted by appellant and it was rejected by his counsel. In our opinion, neither the bill of rights nor the statute requires the granting of a new trial upon this complaint.

It is also urged the cross-examination of certain of the state's witnesses was unduly restricted. In some instances the cross-examination was entirely outside the direct examination and the objections were properly sustained. In some instances the question in controversy was the proper extent of cross-examination. That question always rests in the sound discretion of the trial court. Unless it clearly appears the discretion has been abused and that the substantial rights of the complaining party have been prejudicially affected, a court of review will not interfere. It may be said that in a few instances somewhat greater latitude of cross-examination might have been permitted without constituting reversible error. On the other hand, it does not follow necessarily that a somewhat restricted cross-examination in those instances constituted an abuse of discretion or reversible error. We are satisfied reversible error was not committed in this regard. We shall, however, pause to note in particular a complaint concerning the alleged restricted cross-examination of the witness, J. C. Shearman, a handwriting expert and a state's witness. In order to test the capacity of that witness as an expert it was sought to first introduce on cross-examination, as a basis for comparison by the expert, handwritings which were not in evidence in the instant case and which were not, in the instant case, admitted to be or clearly proven to be the handwriting of the appellant. The state objected on the ground it was not proper cross-examination and, further, that if permitted, it would give rise to proof of purely

collateral issues which would extend the trial interminably on collateral issues and tend to confuse, rather than clarify, the particular issues involved in the instant charges. It must be conceded that the latitude permitted as to cross-examination of handwriting experts has been and is a perplexing one. That the decisions of the various states are in a hopeless state of confusion cannot be doubted. (4 Wigmore on Evidence, 2d ed., 270.) In *Gaunt v. Harkness*, 53 Kan. 405, 36 Pac. 739, this court said:

"Probably there is hardly any rule as to the introduction of evidence on which courts express a greater diversity of opinion than that relating to the proof of handwriting by comparison." (p. 409.)

We are now, however, concerned only with the rule in force in this state. In the Gaunt case it was held:

"On the trial of an action on a promissory note, where the principal issue is as to the genuineness of the defendant's signature thereto, it is error to permit the defendant to present to plaintiff's witnesses, who are called to testify as experts, false signatures to notes, prepared for the purpose of testing the ability of the witnesses to detect a forgery, and to cross-examine such witnesses as to such false signatures, and thereafter to introduce such signatures in evidence and prove by another witness the fact that he wrote them himself.

"The rule that writings to be used as a basis for the comparison of handwritings must be admitted to be genuine by the party against whom they are sought to be used, or at least clearly proven to be so, applies as well to writings used on the cross-examination of witnesses as on the direct." (Syl. ¶¶ 1, 2.)

In *State v. Snyder*, 67 Kan. 801, 74 Pac. 231, this court, upon authority of the Gaunt case, *supra*, held:

"On a trial for selling intoxicating liquor contrary to law, a witness for the state who has testified to purchases of beer from the defendant, which he drank, cannot be asked, upon cross-examination, to drink from a bottle of strange liquor proffered him and then to state if such liquor is of the same kind as that he had previously purchased."

In *Underwood v. Quantic*, 85 Kan. 111, 116 Pac. 361, it was held:

"At the trial the plaintiff called a number of expert witnesses who testified that in their opinion the signature in dispute was genuine. *Held,* error to permit the witnesses on cross-examination to be asked their opinion as to the genuineness of several purported signatures of the same person, and afterward to permit testimony to be offered showing that some of the purported signatures were false." (Syl. ¶ 2.)

The Connecticut court, in *State v. Griswold*, 67 Conn. 290, held:

"Experts called to testify as to their opinion of the handwriting of disputed documents when compared with admitted or proved standards, cannot be cross-

examined as to other writings of unknown authorship, not pertinent to the case, merely to test their ability as experts."

In *M'Arthur v. Citizens' Bank of Norfolk, Va.*, 223 Fed. 1004, it was said:

"It is insisted that the court below erred in refusing to permit the defendants to test the ability as an expert in handwriting of the plaintiff's witness Ramsey, by submitting to him both genuine and imitated signatures of the defendants and asking him to pick out those that were genuine and those that were spurious.

"It would be sufficient to sustain the refusal as a matter of discretion under the circumstances existing at that stage of the trial. . . .

"But we are also of opinion that the evidence was properly excluded as incompetent. We are satisfied that the law is well settled, or at least that the clear weight of authority is to the effect, that a witness in a case like this is permitted to compare the disputed signature only with other signatures which are admitted or proven to be genuine. This question has been thoroughly discussed by the supreme court of North Carolina in a recent opinion which sustains fully the ruling here under consideration. *Fourth National Bank of Fayetteville, appellant, v. Adam McArthur et al.*, (N. C.) 84 S. E. 39, August term, 1914. Other authorities to the same purport are: *Hickory v. U. S.*, 151 U. S. 303, 14 Sup. Ct. 334, 38 L. Ed. 170; *People v. Patrick*, 182 N. Y. 176, 74 N. E. 843; *Wilmington Savings Bank v. Waste*, 76 Vt. 331; *Bacon v. Williams*, 13 Gray (Mass.) 525; *Gaunt v. Harkness*, 53 Kan. 405, 36 Pac. 739, 42 Am. St. Rep. 297; *Andrews v. Hayden*, 88 Ky. 455, 11 S. W. 428; *State v. Griswold*, 67 Conn. 290, 34 Atl. 1046, 33 L. R. A. 227." (p. 1008.)

Appellant further urges some of the endorsements on checks concerning which he proposed to cross-examine the witness were introduced in the former trial of this action and were admitted or proved to be the handwriting of appellant and that this witness had testified the endorsements were the handwriting of appellant. That fact, if true, did not make them a proper subject of cross-examination in the instant case. They were no part of the direct examination of any witness in the instant case. We think the trial court properly sustained the objections to the cross-examination.

It is asserted the motion to discharge appellant on all counts should have been sustained at the conclusion of the state's evidence. The motion should have been sustained on the count which charged uttering of the Jackson, or Jacksen, check. That count had been ordered stricken from the amended information at the beginning of the instant trial and had no further place in this lawsuit. Just why that count continued to remain in the amended information, and a part of this lawsuit, does not appear. At any rate, no conviction

should have been had on that count and the trial court is directed to eliminate it from its judgment and sentence.

Appellant contends the judgment and sentence cannot stand as to the count which charged uttering of the Klamm check. The contention is based on the fact that a motion to discharge appellant on that count had been sustained in the former trial at the conclusion of the state's evidence. It appears such a motion was sustained in the former trial. The count again appeared in the amended information in the instant case. Counsel for appellant moved to strike the count which charged uttering of the Jackson, or Jacksen, check but, for some reason not apparent, did not move to strike the count which charged uttering of the Klamm check. The reading of the amended information was waived in the instant case and appellant joined issues on the charges therein contained by entering thereto his plea of not guilty. He proceeded to trial on that count. No objection was ever made to his being tried on that count. The jury rendered a verdict of guilty thereon. The first contention of former jeopardy and that appellant previously had been discharged on that count was made after the motion for a new trial had been filed on November 8, 1939. The only complaint made was on motion in arrest of judgment filed December 4, 1939. The motion for a new trial was overruled December 6, 1939. We are advised the motion in arrest of judgment is still pending. The immunity from second jeopardy granted by the constitution to one accused of crime is a personal privilege which may be waived and which appellant did waive in the instant case. (*State v. White,* 71 Kan. 356, 80 Pac. 589; *State v. Ford,* 117 Kan. 735, 232 Pac. 1023.) In the Ford case it was said:

"Moreover, a motion in arrest of judgment can raise but two questions, neither of which is here involved — whether the court has jurisdiction and whether the information states a public offense. (*The State v. Yargus,* 112 Kan. 450, 211 Pac. 121.) The defense of second jeopardy may be waived, and is waived by the defendant's going to trial on the merits without urging it, taking the chance of a favorable verdict. (*The State v. White,* 71 Kan. 356, 80 Pac. 589; see, also, 16 C. J. 1254)." (p. 736.)

In the White case it was stated:

"Failing to interpose an objection to entering upon a second trial, he must be held to have waived the right to do so and must abide the result that he invited. (*The State v. Durein,* 70 Kan. 1, 78 Pac. 152.)

" 'To allow a defendant, as was done in this case, to sit idly by during the progress of his trial, and then upon conviction set up, upon motion in arrest

of judgment, or for a new trial, a special defense that he could have raised at the very inception of the trial, would be to sanction a practice which might well be termed trifling with the court.' (*People v. Bennett,* 114 Cal. 56, 58, 45 Pac. 1013.)" (p. 360.)

It will serve no useful purpose to narrate in detail the testimony touching each of the other counts. That evidence has been carefully scrutinized and we are satisfied that in view of the admissions made, the evidence introduced, together with reasonable inferences which the jury had a right to draw therefrom, constituted sufficient evidence to sustain the conviction on each of the forgery counts and on the two remaining counts of uttering.

Touching the forgery counts, it is well to bear in mind the provision of G. S. 1935, 62-1418, which reads:

"In any criminal prosecution for forgery where the charge includes the falsely making and forging of a signature of another person to any written instrument, proof that such signature is not in the handwriting of the person whose signature it purports to be shall be prima facie evidence that the signing of such name was unauthorized and is a forgery."

In *State v. Earley,* 119 Kan. 446, 239 Pac. 981, it was held:

"Possession of a forged instrument by one who utters or seeks to utter it, or otherwise to realize on it or profit by it, without a reasonable explanation of how the possessor acquired it, warrants an inference that the possessor himself committed the forgery or was a guilty accessory to its commission." (Syl. ¶ 3.)

(See, also, *State v. Phares,* 120 Kan. 172, 174, 243 Pac. 266; *State v. Lovell,* 132 Kan. 759, 761, 297 Pac. 685; *State v. Brown,* 145 Kan. 247, 250, 65 P. 2d 333.) In the instant case there was no reasonable explanation which satisfied the jury as to how appellant acquired possession of these checks. In addition, there was both direct and strong circumstantial evidence he forged the endorsements. Admissions of appellant, together with direct evidence and reasonable inferences which the jury had a right to draw therefrom, support the verdict of guilty on the charges of uttering.

Appellant contends the testimony as to certain forgery counts was insufficient unless the testimony of one expert witness on handwriting is sufficient to convict. Appellant insists three experts are required to sustain a conviction. (G. S. 1935, 62-1427.) The difficulty with that contention is, there was substantial testimony in addition to that of the handwriting expert that the endorsements were forged by appellant. Where such additional testimony exists, the statute requiring three experts does not apply. (*State v.*

*Leatherwood,* 129 Kan. 686, 284 Pac. 402, and cases therein cited.) The circumstantial evidence, alone, upon the subject of forging the endorsements was perhaps as convincing as any direct testimony. Appellant's official capacity, his connection with the checks, his approval thereof for cashing in the office of the county treasurer when no amounts were due to the payees thereof, and the fact he had one of them cashed and the money paid directly to himself were all proper circumstances for the consideration of the jury in determining appellant's guilt, both as to forging and uttering. It was also the province of the jurors to compare the handwritings introduced in evidence and to exercise their own judgment concerning the genuineness of the endorsements in order to determine whether appellant forged the endorsements. (*Joseph v. National Bank,* 17 Kan. 256; *State v. Uhls,* 121 Kan. 587, 249 Pac. 597.)

It is further contended the court erred in permitting the county attorney to cross-examine his own witness, Wash Brown, concerning the testimony of that witness on the former trial without first making a serious attempt to elicit from the witness the testimony desired. · The contention is not well taken. In the instant case the witness had already materially weakened the effect of important testimony he had given during the former trial. The same trial judge had heard the testimony of that witness in the former trial. The surprise of counsel for the state was obvious. By reason of that surprise, he asked leave of court to cross-examine the witness. The request was granted, and properly so. (*State v. Olthoff,* 141 Kan. 70, 85, 40 P. 2d 384.)

Appellant contends the amended information did not allege that Jackson, or Jacksen, and Sylvia Reimer were fictitious persons, that there was no evidence they were fictitious persons, and that it constituted error to instruct on the subject of fictitious persons. The evidence disclosed there were no cases pending in the district court involving those persons and that there was no account on which checks could have been executed to them. It was apparent on the face of the checks they had been executed and endorsed with the purpose and intent to defraud. As to the Sylvia Reimer check, it was admitted that if Sylvia Reimer were called as a witness she would testify that she had not authorized the endorsement. The record of the clerk's office also revealed she previously had been paid in full. In the condemnation case, there appeared as owners of land the names of Ernest Jacks and —— Jacks, his wife, but the records dis-

closed no one by the name of Jackson or Jacksen. The records did disclose the Jacks account previously had been paid in full. The state had no way of knowing definitely whether the names of these payees were intended to be fictitious or whether they were intended to represent persons whose names appeared in connection with cases which previously had been pending. No motion was made by appellant to require the state to elect upon which theory it was proceeding. We think, under the circumstances of this particular case, the state was not required to prove and the jury was not bound to believe beyond a reasonable doubt that there were no such persons in the world as Mary E. Jackson or Mary E. Jacksen or Sylvia Reimer. We think the facts developed constituted prima facie evidence of the fictitious character of the checks, and under that evidence the state was not required to show lack of authority to endorse those two checks. (*People v. Gordon,* 13 Cal. App. 678, 685, 110 Pac. 469; *People v. Terrill,* 133 Cal. 120, 128, 65 Pac. 303; *People v. Sharp,* 53 Mich. 523, 525, 19 N. W. 168.) The trial court instructed upon the theory of both genuine and fictitious endorsements and advised the jury that in the event they found the names of the payees of the checks to be fictitious it was not incumbent upon the state to prove want of authority to endorse. The instruction was proper. While the record discloses a general objection to all instructions given, we are unable to find that the particular objection now urged was specifically called to the attention of the trial court, either during the trial or on motion for a new trial. In view of the record, appellant's contention cannot be sustained.

Complaint is made concerning other instructions given and the refusal to give certain requested instructions. We find no reversible error in the instructions given or in the refusal to give those requested.

The judgment of the trial court will be affirmed, except as to the count which charged uttering of the Jackson or Jacksen check. As to that count the judgment and sentence is ordered modified in accordance with the views herein expressed. It is so ordered.