No. 29,010.

THE STATE OF KANSAS, *Appellee*, v. MACE E. LEATHERWOOD, *Appellant.*

(284 Pac. 402.)

Opinion filed February 8, 1930.

*A. E. Crane, B. F. Messick, A. Harry Crane,* all of Topeka, and *Henry Torgeson,* of Council Grove, for the appellant.

*William A. Smith,* attorney-general, *R. O. Mason,* assistant attorney-general, *Harry Tompkins,* county attorney, and *J. V. Humphrey,* of Junction City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal by the defendant from a judgment of conviction on seven counts, numbered second, eighth, ninth, tenth, eleventh, twelfth and thirteenth in the information, charging violations of the banking laws. For several years before its failure in September, 1927, defendant had been the cashier and an active officer of the Citizens State Bank at Council Grove.

The offenses charged, and of which defendant was found guilty, may be briefly stated as follows: Second count, that in October, 1926, with intent to defraud Lee H. Meier and the bank, defendant forged Meier's name to a note for $1,458.33 and deposited the same in the bank as an asset. Eighth count, that in June, 1927, defendant exhibited to one P. V. Miller, a bank examiner then examining the bank, as an asset of the bank a forged note for $2,600 purporting to have been executed by R. P. Dent, knowing that the same was forged and without value. Ninth count, that in June, 1927, defendant exhibited to the said Miller, as an asset of the bank, a forged note in the sum of $1,500 purporting to have been executed by W. C. Mohr, knowing the same to have been forged and of no value. Tenth count, that in August, 1927, defendant made a false report to, and with intent to deceive, the bank commissioner, which report contained specific items which were set out and alleged to have been false. Eleventh count, that in August, 1927, defendant made a false report in writing to W. S. Kennedy, assistant bank commissioner, with intent to deceive Kennedy and the bank commissioner, which report falsely reported the loans, overdrafts and sight exchange of the bank, the items of which were set out. Twelfth count, that in September, 1927, another similar false report was made to W. S. Kennedy with the intent to deceive. Thirteenth count, that in September, 1927, defendant exhibited to D. W. Woolley, a bank examiner then examining the bank, as an asset of the bank, a certain false instrument purporting to be the promissory note of James Revere for $2,200, knowing the same to have been forged and without value. We shall first consider the arguments made by the appellant as to these separate counts and then the argument made as to the case as a whole.

As to the second count, appellant argues that when forgery is charged it is necessary to allege that it was done with intent to defraud. The information in this case makes that allegation. It is next argued that it was incumbent upon the state to show not only that the purported signer had not signed the note, but that he had not authorized the defendant to sign it. The state met that requirement of the proof. The evidence positively precludes the existence of such authority. In proving the forgery the state called a handwriting expert as a witness. Appellant contends that one witness is not enough, that the statute (R. S. 62-1427) requires three. This statute is applicable only when the sole evidence relating to the forg-

ery is that of expert witnesses. (*State v. Foster*, 30 Kan. 365, 2 Pac. 628; *State v. Frey*, 111 Kan. 798, 801, 208 Pac. 574.) In this case there was the positive testimony of the purported maker, as well as other evidence, in addition to the handwriting expert, that the instrument was a forgery, hence the rule stated in the statute is not applicable.

As to the eighth and thirteenth counts it is argued that the evidence does not sustain the verdict. We have examined this contention and find it to be without merit. It is true that at some time prior to the dates of these alleged offenses Dent had owed the bank $2,600, for which the bank held his note, and Revere had owed the bank $2,200, for which the bank held his note, but the evidence is that months before the time of the alleged offenses the makers had paid these genuine notes to the bank, and at the times complained of they owed the bank no such sums, and that the bank had no valid notes of these men in those amounts. The evidence is quite clear that, as charged by the state, these purported notes in question were spurious, and that defendant knew them to be false and of no value.

As to the ninth count: W. C. Mohr was a farmer and stockman and owned bonds which he kept at the bank for safe-keeping, and he was not indebted to the bank. He contemplated a trip, at which time he might purchase cattle, and told defendant that if he did do so he wanted to sell enough of his bonds and get the money to pay for the cattle. It seems that instead of selling the bonds at once defendant made out a note to the bank, to which he signed Mohr's name, for $1,500. Mohr received credit on his account for $1,500, but he understood it came from the sale of his bonds, which were sold in that amount, and knew nothing of this note until this case first came to trial.

As to the tenth, eleventh and twelfth counts, in which defendant was charged with making false reports to the bank commissioner or his assistant, in which charges of the specific items alleged to have been false were set out, appellant contends that the only evidence to support the state's charge was the books of the bank. Defendant testified as to each of these items, in substance, that the reports he made were correct and the bank's books were wrong, and in detail gave testimony as to each item charged to have been false in the reports. It is clear that the jury did not believe this quite unusual explanation. The books of the bank were at least some substantial

evidence as to the condition of the bank with respect to the amount of its loans and other items in question, hence there was evidence sufficient to sustain the verdict.

On the hearing of the motion for a new trial it was shown by affidavit that one of the jurors in defendant's case was a depositor in another bank which had failed in the county. We see nothing in that which necessitated the granting of a new trial. It is argued in appellant's brief that another one of the jurors, before being selected as a juror, had made remarks tending to indicate his belief that defendant was guilty. The record does not show that this was ever brought to the attention of the trial court. While defendant's case was being tried A. L. Owens, who had been cashier of the other bank which had failed in the county, and who had been charged with violations of the law, entered a plea of guilty. That fact was called to the attention of the court on the hearing of a motion for a new trial in this case, and it was argued there and here that this created an atmosphere prejudicial to appellant. The county attorney offered to show that no juror in appellant's case was present in court when Owens presented his plea of guilty. The court deemed such evidence unnecessary. It is clear that the trial court was convinced that there was nothing detrimental to the defendant in the circumstance, and we are unable to see why of necessity there should be. Appellant complains here of improper, prejudicial remarks made by counsel for the state in argument to the jury. No record was made of these objectionable remarks, if they were made. Counsel for the state deny that some of the remarks charged to have been made were in fact made. There is nothing in the record to disclose that the trial court's attention was called to any improper remarks either at the time of the trial or on the motion for a new trial. Under these circumstances we would not be justified in reversing the case.

Lastly it is argued that at the time of the trial defendant was in poor health, was broke financially, unable to employ counsel, and was compelled to and did conduct his own defense with the aid of an attorney appointed by the court, and that he did not have a fair trial. The record tends to indicate that defendant deemed himself thoroughly competent to conduct his own case, and that he wanted to do it. His opening statement to the jury, printed in full in the abstract, discloses a knowledge of the evidence likely to be presented and of the questions involved fully as complete as would be

expected of any attorney, and the examination and cross-examination of the witnesses which he conducted himself showed shrewdness and ability seldom equaled by one not familiar with the practice of the law. There is nothing in the record to indicate that his cause suffered because he presented it himself. In fact, one reading the record might well conclude that he deemed that method of trying his case to be to his best interests. In any event there is nothing on this point upon which error can be predicated.

The judgment of the court below is affirmed.