No. 43,886

STATE OF KANSAS, *Appellee*, v. CHARLES RAY HILL, *Appellant*.

(394 P. 2d 106)

Opinion filed July 14, 1964.

*Richard F. Waters*, of Junction City, argued the cause, and was on the briefs for the appellant.

*Donn J. Everett*, County Attorney, Manhattan, argued the cause, and *William M. Ferguson*, Attorney General, Topeka, was with him on the briefs for the appellee.

The opinion of the court was delivered by

FONTRON, J.: On March 4, 1962, at about 10:00 p. m., Doebele's IGA Foodliner at Manhattan, Kansas, was held up and robbed of approximately $780.00, and a number of Gruen wrist watches. At the time of the robbery, the only employe in the store, Myron D. Nelson, was in the office counting the cash to be placed in the safe. The robber, who wore a red mask, pointed a gun at Nelson and ordered him to lie down on the floor. On complying, Nelson was directed to crawl to the back room of the store and as he neared the back end of the store he was struck on the head with the gun. As a result of the blow, Nelson lost consciousness and remembered nothing until he awoke in the hospital.

Sometime later, the defendant, Charles Ray Hill, then a sergeant stationed at Fort Riley, was identified by Nelson as the robber, under circumstances to be discussed later in this opinion. A charge

of first-degree robbery was lodged against the defendant and he was tried and convicted on that charge. After his motion for new trial was overruled, the defendant was sentenced for a term of not less than ten nor more than twenty-one years, and this appeal followed.

The evidence introduced at the trial was both direct and circumstantial in character. Mr. Nelson appeared as a witness and identified the defendant as being the masked man who had robbed the store and slugged him. The circumstantial evidence consisted of certain colored pictures or slides taken of Nelson's face and head shortly after the robbery, and various items of personal property linked in one way or another with the defendant. These will be considered in detail as we proceed.

The defendant first complains of the colored slides on two grounds: First, that they were given to the jury without having been admitted into evidence; and second, that they were irrelevant to the issue involved and, being inflammatory, were essentially prejudicial, particularly in view of the inconclusive nature of the other evidence against him.

The slides given to the jury and taken into the jury room were among the ten slides which collectively were offered by the state as plaintiff's Exhibit No. 6. The trial judge reserved his ruling on the state's offer until he could have an opportunity to view all of the pictures which comprised the exhibit, and the defendant now claims that Exhibit No. 6 was never formally admitted into evidence.

It may well be that the record fails to reflect the court's ruling on the state's offer and the formal admission into evidence of any part of the pictures. The counter abstract, however, contains the affidavits of Honorable Lewis L. McLaughlin, the trial judge, and Mr. Gordon L. Johnson, the court reporter. Judge McLaughlin's affidavit recites, in substance, that colored slides 6 to 15, inclusive, were offered by the county attorney as plaintiff's Exhibit No. 6, at which time he withheld ruling until he could have a chance to look at them at recess; that following the noon recess, he called both counsel into his chambers and ruled that slides 8, 10, 11, 13 and 14 would be admitted, and the balance excluded; and that no objection thereto was made for the record. Mr. Johnson's affidavit recited, in substance, that Judge McLaughlin handed him parts of Exhibit No. 6, as admitted into evidence, and that only slides 8, 10, 11, 13 and 14

were given to the jury for examination. Since the record appears to be wholly silent as to the court's ruling, the omission is one which would seem curable, in the manner here attempted, under the doctrine expressed in *State v. Bennell,* 137 Kan. 183, 19 P. 2d 443.

The two affidavits clearly dispel any notion that the pictures received by the jury had not been admitted in evidence. In fact, defense counsel stated in oral argument before this court, that he would not dispute the contents of the affidavits but that he had no recollection of the slides being admitted and that he relied on the fact that the record does not disclose that they were admitted. However, the record now reveals, as it appears before us, that the five pictures shown the jury had been admitted.

The contention that the colored slides themselves were inflammatory, and thus inadmissible, lacks merit. In this case, a crime of violence had been charged, the crime of robbery, of taking property belonging to Joseph Doebele by doing violence to the person of Myron Dale Nelson and by putting Nelson in fear of immediate injury to his person. The pictures clearly were material as tending to establish the violence which was alleged. The rule is well established in this as well as other jurisdictions that exhibits, be they pictures or otherwise, which are relevant and material to the matters in issue, are not rendered inadmissible merely because they may be shocking or gruesome. (*State v. King,* 111 Kan. 140, 152, 206 Pac. 883; *State v. Lytle,* 177 Kan. 408, 280 P. 2d 924; *State v. Stubbs,* 186 Kan. 266, 349 P. 2d 936; *State v. Turner,* 193 Kan. 189, 392 P. 2d 863.)

The foregoing conclusion disposes of any contention of prejudice which might have flowed from improper admission of the pictures. However, defense counsel in contending that special prejudice resulted because of the paucity of evidence, has questioned both by brief and oral argument the admissibility of other articles. We shall briefly note the suspect evidence. The articles were: First, a gun, not identified as the weapon used in the robbery. Although the defendant denied owning the gun, the weapon was found in the trunk of his car, and a fellow soldier, Sergeant Zoretic, testified that defendant gave him the gun and he put it in the car. Second, a red fuzzy or "knitty" sweater of the same type material as that of the mask worn by the robber, the sweater being found in defendant's car and having been given to defendant, according to Zoretic, as a present. Third, two Gruen wrist watches, one a man's, the other a

woman's, which were of the type taken in the robbery. The man's watch was found among the defendant's property and the defendant told investigators he had bought it from a Junction City pawnshop the middle of January, while the woman's watch, according to Zoretic's testimony, had been handed Zoretic by defendant on about March 13, 1962, to give to his wife. Another bit of evidence not mentioned by the defendant consisted of three rolls of dimes found in defendant's car. Some rolls of coins were among the loot taken in the robbery.

While it may be true that the probative effect of the exhibits may not have been great, we nonetheless believe that they were admissible as circumstances to be considered by the jury in its consideration of the case. The weight and value of such evidence was for the jury to determine; the jury was entitled to assess its worth. It is also to be observed that while the record reflects that objection was made to the admission of the gun, no objection is shown to have been interposed to the admission of the sweater, the watches, or the rolls of coins. Consequently, whatever objection might have been made to the admission of the latter items must be deemed to have been waived. (*Briley v. Nussbaum*, 122 Kan. 438, 252 Pac. 223.)

A further complaint relates to an extrajudicial identification made of the defendant by Nelson at a police line-up. Nelson testified that the men in the line-up had red masks over their faces and were told to say, "lie down on the end of the floor"; that he identified one of the men as the defendant Hill by his eyes, his eyebrows, stature, height, and build; and that he saw the defendant without the mask after the line-up and he was the same individual as the man in court. Two officers testified there were six men in the line-up and that Nelson identified the defendant. One of the officers testified that all six men were dressed alike in T-shirts and fatigue trousers and that Nelson identified Hill by the eyes and voice, while the other officer testified that all the men except Hill wore fatigue jackets and that Nelson did not mention Hill's voice.

The record does not show that any objection was made to such testimony at the time it was given, and defendant does not now contend that such evidence was itself inadmissible. He does complain, however, about the circumstances under which the extrajudicial identification was made. The bases of his complaints are that Nelson had previously been shown his, the defendant's, picture which influenced Nelson in his identification, and that at the line-up

he, the defendant, was dressed differently than the other five men, and thus stood out "like a sore thumb." We consider neither of these contentions meritorious. First, it was not conclusively established that Nelson had been shown defendant's picture prior to the line-up. Nelson himself stated on the stand that he did not remember whether defendant's picture was shown to him before or after the line-up, although he could have seen it before. Second, the evidence was in conflict as to the manner in which the six men were dressed at the line-up and it was for the jury to determine that conflict. Furthermore, and of greater importance, the means whereby or the manner in which an identification is made relates to the weight and sufficiency of the evidence rather than to admissibility thereof. (See annotation in 71 A. L. R. 2d 449, et seq.)

We cannot agree with the defendant's claim that Nelson's identification was either inadequate or weak. His identification at the line-up was based on the several factors heretofore mentioned. In addition, one of the officers testified that Nelson identified Hill by voice, as well, which is an accepted means for use in making an identification. (State v. Herbert, 63 Kan. 516, 66 Pac. 235; State v. Nixon, 111 Kan. 601, 207 Pac. 854.) At the trial, Mr. Nelson himself was positive in his identification of the defendant, testifying that "I mean there was just no doubt in my mind."

Possibly the most serious point raised on this appeal was the refusal of the trial court to require the state, upon the defendant's motion, to produce a report of the Kansas Bureau of Investigation for the defendant's inspection and for his use in cross-examining the witness Nelson. As disclosed by the record, this question arose in the following manner.

On cross-examination, Nelson testified that he did not now recall whether or not his assailant wore a dusty army jacket nor did he remember making a statement in regard to the jacket to law officers, but that it would probably help refresh his recollection if he could see a copy of the investigator's report. He also testified that he did not recall making the statement that there was a streak of gray in the assailant's hair, and he denied that he told investigators that the streak of gray appeared to have been powdered.

At this point, defense counsel stated to the court that a K. B. I. report existed, that it had been available to the state but not to the defendant, that he knew approximately what it contained and that it contained statements which were inconsistent with the statements now made. Counsel thereupon moved that he be fur-

nished with a copy of the report. After the county attorney stated that defense counsel had seen and gone through the report and had made notes from it, the court overruled the defense motion.

Upon further cross-examination, Nelson again stated that he did not remember anything about a dusty jacket, at which time the defense counsel stated he would like to renew his request to be furnished with a copy of the investigating report and would like to make a proffer as to what it contained. This was overruled by the court and counsel was told to proceed with his cross-examination. Counsel then stated he had no further questions.

The proffer which was refused by the court is set forth in appellant's abstract and is to the effect that the county attorney possessed a four or five page typed report prepared by James Kline (shown by the record to be a K. B. I. agent) in the course of his investigation which report contains statements made by Nelson contrary to statements made by Nelson on the witness stand and which report Nelson admitted would help refresh his recollection; that defense counsel had scanned the report very quickly and briefly, making a few rough or scribbled notes which were quite inadequate for use in cross-examining Nelson or assisting to refresh his recollection, and that no possible prejudice could be shown by the state in producing the report.

In support of his claim that the trial court committed error in refusing to sustain his motions to produce the K. B. I. report, the defendant cites the case of *Jencks v. United States*, 353 U. S. 657, 77 S. Ct. 1007, 1 L. Ed. 2d 1103, which holds, in substance, that a defendant is entitled to an order directing the Government to produce for inspection and possible use in cross-examination, statements of witnesses, or reports given by them to the F. B. I., which touch on events and matters to which the witnesses testify at the trial.

The defendant contends, in essence, that under the rationale of the Jencks decision he has been deprived of a right guaranteed him under the Fourteenth Amendment because of the trial court's action in refusing to require the prosecution to produce the K. B. I. report containing prior statements by Nelson about matters to which he testified. The defendant thus would equate the constitutional effect of the trial court's refusal to require the production of Nelson's prior statements with the effect that an illegal search and seizure has been held to have on the constitutional rights of an accused. (*Mapp v. Ohio*, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081.)

We doubt, however, that an issue concerning federal due process is presented here, or that the application of the Fourteenth Amendment to state court procedures is involved under the present circumstances. In the case of *Taitano v. Government of Guam*, 187 F. Supp. 75 (1960), the court in passing on the point raised by defendant, said:

". . . The Jencks case, supra, in requiring the production, under certain circumstances, of documents in possession of the government, did not purport to be stating a requirement of due process, but stated that the restriction on such production contended for in that case would 'be clearly incompatible with our standards for the administration of criminal justice in the federal courts and must therefore be rejected.' Jencks v. United States, supra, 353 U. S. at page 668, 77 S. Ct. at page 1013. This view is reinforced by the following statement of the Supreme Court in Palermo v. United States, 1959, 360 U. S. 343, at page 345, 79 S. Ct. 1217, at page 1221, 3 L. Ed. 2d 1287:

" 'Exercising our power, in the absence of statutory provision, to prescribe procedures for the administration of justice in the federal courts, this Court, on June 3, 1957, in Jencks v. United States, 353 U. S. 657 [77 S. Ct. 1007, 1 L. Ed. 2d 1103], decided that the defense in a federal criminal prosecution was entitled, under certain circumstances, to obtain, for impeachment purposes, statements which had been made to government agents by government witnesses.'

"Following the Jencks case, supra, Congress enacted what has now become Sec. 3500 of Title 18 U. S. C. defining the rules that should govern in this particular area in criminal prosecutions brought by the United States, and the Supreme Court has recognized this Congressional definition of the rules as the one now controlling. Palermo v. United States, supra, 360 U. S. at pages 347-348, 79 S. Ct. at pages 1222-1223; Rosenberg v. United States, 1959, 360 U. S. 367, 369, 79 S. Ct. 1231, 3 L. Ed. 2d 1304." (pp. 76, 77.)

We do not believe the trial court erred in overruling the defendant's motions to be furnished with a copy of the K. B. I. report containing statements which Nelson may have made about the robbery. The report obviously was one made in the course of investigating the robbery and thus in the pursuance of official duty. A report of such nature is not one of a public character even though it be compiled by public officials; it is one designed solely for the use of officers in solving the crime under investigation and in bringing to justice the person or persons responsible for its commission. No doubt, the report in this case contained information of a confidential nature, the disclosure of which might have serious adverse effects on the future course of efficient law enforcement.

The point involved here was considered at considerable length in *State, ex rel., v. Showalter*, 189 Kan. 562, 370 P. 2d 408, which we believe to be controlling of the instant case. In the Showalter

case, the defendant sought to secure by means of a demand for inspection or motion for discovery copies of statements made by him to the county attorney as well as a transcript of witnesses' testimony given at an inquisition conducted by the county attorney pursuant to G. S. 1949, 60-1619. The defendant's motion was overruled by the trial court and, in upholding the trial court's action, this court said:

". . . It has been held that the books and papers acquired by a county attorney in investigating infractions of the law are his *quasi* private data, which are of no concern to anyone but himself unless and until, in his discretion, he reveals their contents in court. (*Henry v. Simon*, 128 Kan. 113, 115, 276 Pac. 55.)

"Proceedings under the foregoing sections by the attorney general or county attorney are conducted privately. One of the reasons for conducting such an investigation without publicity is the importance of preventing scheming and conspiring to nullify the effectiveness of inquisitorial functions. Another reason is that the cloak of secrecy protects witnesses, willing to assist in bringing to justice those who may be endangering the safety of society, or who are unfaithful in the performance of their public duties, from unnecessary censure, criticism and abuse. (*In re Ferris*, 175 Kan. 704, 712, 267 P. 2d 190.) Where there has been an inquisition which discloses the commission of an offense warranting either the commencement of a criminal prosecution, or the ouster of a public official, the prosecuting officer may file the evidence taken with the petition or complaint (*State v. Harwi*, 117 Kan. 74, 75, 230 Pac. 831), but he is not required to do so (*State v. Brecheisen*, 117 Kan. 542, 543, 232 Pac. 244). Until such time as the prosecuting officer makes the content of witnesses' statements or testimony available in court, the defendant is not entitled to copies thereof, and a motion by the defendant to inspect the same during the pendency of such proceeding is properly disregarded and stricken by the court." (p. 568.)

While the situation involved in the Showalter case was not identical with the one which now confronts the court, we believe the circumstances sufficiently similar that the principles which were held to govern that case and the reasoning on which that case is predicated should apply with equal force and effect to the circumstances we are now considering.

Our conclusion is not an isolated one. In *State v. Brake*, 99 Ore. 310, 195 Pac. 583, the court held it was not error for the trial court to refuse the defendant's demand that the district attorney produce for inspection and for purpose of cross-examination, the stenographic notes or a transcript thereof of a "second confession" made by a state's witness who testified at the trial. In its opinion, the court said:

". . . We shall assume that the 'second confession,' which the defendant sought to procure, was a transcript of the notes made by the stenog-

rapher. It does not appear that Moore (the witness) directed the notes to be made, or that he approved, or that he signed them. Nor does it appear that Moore directed that the notes be transcribed, or that he approved the transcript, or signed it, or even knew before being called as a witness that a transcript of the notes had been made. At most the transcript was only the private memoranda of the district attorney made for him by or under the direction of his representative." (pp. 331, 332.)

In *State v. Pambianchi,* 139 Conn. 543, 95 A. 2d 695, the fourth paragraph of the syllabus states:

"A ruling that a written statement made by a witness to the police could not be used in the cross-examination was a proper exercise of the court's discretion."

See also *United States v. Baluyot,* 40 Phil. 385.

Our review of the entire record convinces us that the court below did not commit prejudicial error and that the judgment of guilty rendered against the defendant was based on substantial competent evidence.

The judgment is affirmed.

FONTRON, J. dissenting: In my judgment the trial court's refusal to require the state to produce the K. B. I. report was clearly erroneous. As I view the situation, the effect of denying the defendant access to a document under the state's control which contained statements previously made by Nelson concerning the very matters as to which he had testified, was to deprive the defendant of the fair and impartial trial to which an accused is entitled under our laws and which this court has so consistently and zealously guarded.

The principle enunciated in *Jencks v. United States,* 353 U. S. 657, 77 S. Ct. 1007, 1 L. Ed. 2d 1103, is a most salutary one, with deep and substantial roots in the legal experience of many jurisdictions. The compelling weight of authority is in accord with the Jencks case, some even antedating that federal decision. The prevailing rule is well stated in *State v. Hunt,* 25 N. J. 514, 138 A. 2d 1:

". . . Since the county prosecutor's primary function is not to convict but to see that justice is done (*State v. Orecchio,* supra, 16 N. J. at *page* 140) he, as well as the defense counsel, should readily welcome the wholesome principle which we now approve for the administration of justice in our State, that where it appears that a State's witness has made prior notes or statements relating to the subject matter of the direct testimony which he has given, the defense is entitled to inspect and use on cross-examination the prior notes or statements if they are or can be made available. And the principle is generally applicable without any preliminary showing of inconsistency (*Jencks v. United States,* supra) or any resulting right in the State to introduce the notes or statements as corroborative evidence on its behalf." (pp. 530, 531.)

In 8 Wigmore, Evidence (McNaughton rev. 1961), § 2224, the rule is similarly expressed:

"It seems wise to stand firm upon ordinary considerations of fairness, and to hold that the prosecutor is not entitled at the trial to withhold from the inspection of the accused and the jury any documents or chattels relevant to the case unless they are otherwise privileged." (p. 209.)

See also *People v. Walsh*, 262 N. Y. 140, 186 N. E. 422; *People v. Riser*, 47 Cal. 2d 566, 305 P. 2d 1; *The People v. Moses*, 11 Ill. 2d 84, 142 N. E. 2d 1; *People v. Dellabonda*, 265 Mich. 486, 251 N. W. 594; *State v. Guagliardo*, 146 La. 949, 84 So. 216.

The rule is subject to the qualification that the document sought by the defendant must reasonably be available. The condition of availability was fully met in this case for the state admits in its brief that the report was in the possession of James S. Kline, the K. B. I. agent who prepared it, at the very time he, Kline, was testifying.

The matter of identification was crucial in this case. The circumstantial evidence, as pointed out by defense counsel, was weak at best. Neither the gun nor the sweater were ever identified as having actually been used in the robbery. Nor was it possible to identify the watches as those which had been stolen. The same may be said of the three rolls of dimes found in defendant's car. In my judgment, none of the circumstantial evidence, taken singly or together, was of compelling quality or substantial probative effect. Under such circumstances the language of the court in *The People v. Moses*, supra, is apropos:

". . . In this case, identification of the accused was crucial. There is no suggestion that the public interest could be prejudiced by divulging these records, and no other ground of privilege is apparent. Where it appears that there is evidence in the possession and control of the prosecution favorable to the defendant, 'a right sense of justice demands that it should be available, unless there are strong reasons otherwise.' *People v. Walsh*, 262 N. Y. 140. We hold, therefore, that it was error to refuse to turn over the records in question." (p. 89.)

The prejudicial effect of refusing to allow the defendant to inspect the report and use it on cross-examination becomes the more apparent when one considers these circumstances surrounding Nelson's identification of the defendant: that Nelson had but approximately eight seconds to see the robber's face; that while Nelson testified he did not know that he saw a picture of the defendant before making his identification, he could have, and he supposed they (the police) asked him "if there was any chance this could look like the man who

held me up" and "I said it was"; and finally, that there was credible testimony, although contradicted, that the defendant was dressed differently at the line-up from the other men.

The county attorney calls attention to the fact that the defense attorney had seen the report, had made notes from it and did not request it prior to trial. The observation is entirely extraneous to the issue presented. Not only did defense counsel contend that his contact with the report was brief and inadequate, but it was essential that he have the report itself, or a copy thereof, if his cross-examination of Nelson as to prior statements was to be effective. This was well expressed in *Jencks v. United States*, supra, where the court said:

"Every experienced trial judge and trial lawyer knows the value for impeaching purposes of statements of the witness recording the events before time dulls treacherous memory. Flat contradiction between the witness' testimony and the version of the events given in his reports is not the only test of inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony." (p. 667.)

Nor is it important that Kline, the K. B. I. agent, was not asked to produce the report while testifying as a state's witness. The court had twice refused to compel the state to produce the document and the defendant could hardly expect to fare better a third time. Moreover, the report was needed for use in cross-examining Nelson, not Kline.

I am not impressed with the suggestion that the defendant was not entitled to have the report produced because he failed to subpoena it into court. The defendant was not required to anticipate that Nelson would even be called as a witness, or, if called, that his testimony would contradict his former statements.

The issue involved here is one of serious import. It strikes at the heart of what is encompassed in a fair trial. A trial is not a test of wits; it is a quest for truth. Particularly must this be so where a man's liberty is at stake. This was well put in *Centoamore v. State*, 105 Neb. 452, 181 N. W. 182, where the court said:

"Criminal proceedings are instituted with the object, not alone of securing convictions, but of getting as near to the truth as possible on the question of the guilt or innocence of the accused. . . ." (p. 455.)

For the reasons herein expressed, I must respectfully dissent.

PRICE and SCHROEDER, JJ., join in the foregoing dissent.