No. 45,281

State of Kansas, *Appellee,* v. Leonard W. Young, *Appellant.*

(454 P. 2d 724)

Opinion filed May 17, 1969.

*Ronald R. McEnulty,* of Wichita, argued the cause, and was on the brief for the appellant.

*James W. Wilson,* deputy county attorney, argued the cause, and *Kent Frizzell,* attorney general, *Keith Sanborn,* county attorney, and *A. J. Focht,* deputy county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This is an appeal by the defendant, Leonard W. Young, from a conviction by a jury of second degree forgery (K. S. A. 21-608) and uttering a forged instrument (K. S. A. 21-609) and the resultant concurrent sentences, imposed under the habitual criminal act, of not less than two nor more than twenty years in the state penitentiary.

The primary questions presented relate to: (1) alleged trial errors which defendant contends denied him a fair trial; (2) the sufficiency of evidence to sustain the convictions; and (3) the adequacy of notice of the state's intention to invoke the provisions of the habitual criminal act.

The charges stemmed from a check dated September 12, 1966, purportedly drawn by "Bradly Jordan" of 1707 N. Glendale, Wichita, on The Farmers & Merchants State Bank in Derby, payable to Leonard Young, in the sum of $20, which defendant admitted endorsing and cashing at Mr. D's, Inc. Seneca, a grocery store in Wichita. The check, bearing a label marked "unable to locate," was returned by the bank to the store, and defendant was subsequently charged with the stated offenses.

Defendant was brought before the district court on January 24, 1967, found to be indigent, and counsel was appointed. On March 2 defendant filed a motion requesting the court for an order to furnish him with the necessary funds to employ a handwriting expert in order to prove he did not forge the check. The motion was overruled March 10. On April 19 defendant filed a motion requesting a pretrial conference at which the state be required to disclose all information known to it that was favorable to the defendant. Hearing on the motion was set for May 12, but, at the

request of defendant's counsel, was continued for argument until May 15, the date of trial. The trial court denied the motion.

Immediately before the commencement of trial the state gave defendant and his counsel notice that in the event of conviction it intended to invoke the provisions of the habitual criminal act, based on a prior felony conviction in 1964. Defendant objected to the time and manner in which the notice was given, and the court overruled the objection.

Thereafter, the state introduced evidence which showed that the purported drawer of the check in favor of this 29-year-old defendant was a 12-year-old lad named "Bradley Jordan" who had a savings account, but did not have, and never had, a checking account in the above-named bank. Bradley denied he was the drawer of the check, and upon examining it, testified the signature thereon was not his—the first name being misspelled. He further testified he did not know the defendant; that he was the only Bradley Jordan at the North Glendale address, where he lived with his parents; and that he had not given anyone permission or authority to sign his name on a check. Bradley's testimony was corroborated by his father, Athen Jordan, who also testified that the signature on the check in question was not that of Bradley. Bradley's testimony concerning his savings account was substantiated by the cashier at the bank, Donald Murphy, who testified that a thorough check of the bank's records revealed a savings account in the name of "Bradley Jordan," a 12-year-old boy living at 1707 North Glendale, but no record of a checking account in that name.

At the close of the state's evidence the defendant again asked for the appointment, at the state's expense, of a handwriting analyst, and the court denied the request.

Although defendant admitted endorsing and passing the check in question, he denied writing the check, or that any of the handwriting on it was his, other than the endorsement. Defendant testified that he obtained the check, and other checks, from his 14-year-old brother, Terry Gene Young, and Donald Jordan, Bradley's older brother, who had been to the defendant's home on September 12. According to defendant, the boys told him they got the checks from Donald's brother, and defendant thought Donald's brother was writing the checks for money for the boys. Defendant said he did not know who wrote the check in question—it was written when it was given to him—and he did not have any knowl-

edge that the boys did not have authority from Bradley to give the check to him. Defendant admitted that it did strike him a little odd that two 14-year-old boys had given him several $20 checks to cash, yet he never noticed the variation in the spelling of Bradley's name or the different addresses on the checks; he just took them and cashed them at different places, giving a different home address than where he actually lived, and keeping only a small part of the money for himself as reimbursement for having gone to the trouble of cashing the checks for the two boys.

The state presented evidence, on rebuttal, by Donald Jordan, who testified he knew nothing about the check and had not received any money from it or any other checks.

Defendant first specifies as error the trial court's denial of his request for funds to employ a handwriting expert. His principal argument is that the trial court's action resulted in discrimination against him because of his indigency and was violative of his constitutional rights under the due process clause, citing *Griffin v. Illinois*, 351 U. S. 12, 100 L. Ed. 891, 76 S. Ct. 585. We are unable to agree.

The granting or denying of a motion to provide supporting services to counsel for an indigent defendant is a matter within the discretion of the trial court, whose ruling will not be disturbed in the absence of a showing that such discretion was abused to the extent that the defendant's substantial rights were prejudiced. (*State v. Taylor*, 202 Kan. 202, 447 P. 2d 806.) Since we have no statute authorizing and providing for such services, a request therefor must depend on the facts and circumstances of each case.

Here, when defendant made his separate requests, both before trial and during the presentation of the state's evidence, there was no showing that the services of a handwriting expert were reasonably available and necessary to prepare an adequate defense. In fact, absent is any indication that defendant or his counsel had contacted or made any effort to secure the services of an analyst if funds were made available.

Unlike in *Taylor*, the state did not rely on expert testimony in proving its case. There was the testimony of Bradley Jordan, corroborated by his father, denying the genuineness of the drawer's signature appearing on the check. In a forgery prosecution where the charge includes the false making and forging of a signature of another person to a written instrument, proof that such signature

is not in the handwriting of the person whose signature it purports to be is prima facie evidence that the signing of such name was unauthorized and is a forgery. (K. S. A. 62-1418.) The testimony of experts is not required where there is other evidence of forgery. (See, K. S. A. 62-1427; *State v. Rowland,* 172 Kan. 224, 239 P. 2d 949; *State v. Parsons,* 140 Kan. 157, 33 P. 2d 1096; *State v. Leatherwood,* 129 Kan. 686, 284 Pac. 402.) Defendant admitted the endorsement on the check was in his own handwriting. In addition, handwriting exemplars of Bradley, his brother Donald, and the defendant were obtained during the trial and admitted into evidence without objection for consideration by the jury. It was within the province of the jury to compare these handwriting specimens and to exercise its judgment concerning the genuineness of the drawer's signature and determine whether or not defendant forged the instrument. (*State v. Maxwell,* 151 Kan. 951, 102 P. 2d 109, 128 A. L. R. 1315; 29 Am. Jur. 2d, Evidence § 806; Anno. 80 A. L. R. 2d 272.)

Under all the facts and circumstances, the trial court did not abuse its discretion in denying defendant's request.

There is no merit in defendant's next contention that his right to a fair trial was prejudiced by the court's denying his motion for a pretrial conference and disclosure by the state of all information favorable to him. The motion specifically referred to information of any inconsistencies made in writing, or orally, by any persons known to the state, whether or not such persons were intended to be used as witnesses at the trial. Defendant neither cites any authority to support his position, nor does he allege the state suppressed evidence favorable to him. (See, *Brady v. Maryland,* 373 U. S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.) We view the motion similar to that in *State v. Jones,* 202 Kan. 31, 446 P. 2d 851, where the defendant requested the county attorney to produce statements taken by police officers during their investigation, and further, to produce the statements of any witness not called at the preliminary hearing. There, we said the statements were not official documents nor a part of any court record, and the court did not err in denying the request, citing and quoting with approval from *State v. Badders,* 141 Kan. 683, 42 P. 2d 943. For other decisions of like import see *State v. Lemon,* 203 Kan. 464, 454 P. 2d 718; *State v. Metcalf,* 203 Kan. 63, 452 P. 2d 842; *State v. Oswald,* 197 Kan. 251, 417 P. 2d 261; *State v. Hill,* 193 Kan. 512, 394 P. 2d 106. The motion here was filed nearly a month prior to trial, but at defendant's request was

not heard until the day trial commenced. The names of all state witnesses had been endorsed on the information and the witnesses were available for pretrial interviews had defendant or his counsel so desired. An examination of the record of trial fails to disclose any reference to prior inconsistent statements, either oral or written, by any of the witnesses. Defendant has completely failed to show he was prejudiced in any way by the trial court's ruling.

Defendant next complains that the trial court erroneously admitted into evidence state's Exhibits 3, 5 and 6, which were other checks endorsed and cashed by the defendant during the same period of time as the one on which he was prosecuted. The three checks were admitted over objection during cross-examination of the defendant by the assistant county attorney. The specific objection interposed was that the "stickers" or labels attached to each check were hearsay and that "no proper foundation" had been laid for their admission into evidence.

The checks and attached "stickers" were essentially identical to the check which defendant was charged with forging and uttering. Each check was purportedly drawn by Bradley Jordan, made payable to Leonard Young, in the amount of $20; two were dated September 13, and the other September 11. Defendant admitted receiving the checks from his brother and Donald Jordan, endorsing them, and cashing them at different places. Attached to each of the four checks introduced by the prosecution were identical "stickers" stating, "Returned by The Farmers & Merchants State Bank, Derby, Kansas"—"Returned Unpaid For Reason Indicated:"—"unable to locate." The cashier of The Farmers & Merchants State Bank testified only as to the one check upon which prosecution was based, stating, "The check was received by our bank. We could not find any account and we returned the check with the label on it, 'unable to locate.'" Since all the labels or "stickers" were identical in form and content, we believe the court did not err in admitting the three exhibits without further foundation. The purported stamp or writing of a drawee bank on a check or accompanying it stating that acceptance or payment has been refused because there is "no account" is admissible in evidence and creates a presumption of dishonor. (K. S. A. 84-3-510.) There was sufficient evidence to infer the writings were made in the regular course of the bank's business;

hence, they were admissible as exceptions to the hearsay rule. (K. S. A. 60-460 [m].)

Defendant further challenges his convictions on the basis they were not supported by the evidence. He urges there was no proof that the check allegedly forged was drawn on an incorporated bank, as required by K. S. A. 21-608. Defendant apparently overlooks the fact that under the statutes of this state every state bank using the word "state" as part of its name must be an incorporated bank. (K. S. A. 9-701, 9-801; *State v. Parsons*, supra.) The trial court properly took judicial notice of the statutes (K. S. A. 60-409), and there was no deficiency in the evidence as to this element of the offense.

Defendant's additional argument that there was no evidence he actually forged the instrument or that he knew the check was forged when he uttered it is likewise untenable. Proof of the manual execution of the false signature by the defendant is unnecessary to sustain a charge of forgery. The principle is well established that possession of a forged instrument by one who utters or seeks to utter it, or otherwise to realize on it or profit by it, without a reasonable explanation of how he acquired it, warrants an inference that the possessor himself committed the forgery or was a guilty accessory to its commission. (*State v. Mader*, 196 Kan. 469, 412 P. 2d 1001; *State v. Gates*, 196 Kan. 216, 410 P. 2d 264; *State v. Johnson*, 189 Kan. 571, 370 P. 2d 107; *State v. Earley*, 119 Kan. 446, 239 Pac. 981.) In the instant case there was direct evidence that the check was a forged instrument. Defendant, although denying he forged the check or knew anything about its being forged, admitted he had possession of the check and cashed it. The jury, obviously, did not accept defendant's explanation about how he acquired possession of the instrument and, consequently, was justified in finding defendant himself was the forger. Likewise, from the same circumstances, the jury was warranted in finding defendant knew the check was a forgery at the time he cashed it. (*State v. Satterfield*, 202 Kan. 395, 449 P. 2d 566, *State v. Murphy*, 145 Kan. 242, 65 P. 2d 342.)

The specifications of error already discussed dispose of defendant's additional contention the trial court erred in overruling his motion for new trial.

As a final point, defendant attacks his sentence under the habitual criminal act with the rather ingenious argument that constitutional standards of due process were not met because the state failed to

show he had been informed of the provisions of the act prior to the commission of the offenses for which he was convicted. He urges that the act is disciplinary in nature and its purpose cannot be effectuated unless the felon is first notified that enhanced punishment will result if he commits another felony. Acceptance of defendant's suggestion would add a new dimension to the law. The argument could well be answered by the oft repeated cliché, "Ignorance of the law is no excuse."

While it is true the purpose of the act is to provide for increased punishment as a disciplinary measure for those whom previous conviction and punishment have failed to reform (*State v. Ricks*, 173 Kan. 660, 250 P. 2d 773), due process of law has never been extended beyond the requirement that defendant have reasonable notice that the act will be imposed, so that he may be heard upon the issue of his prior conviction. In *Brown v. State*, 196 Kan. 236, 409 P. 2d 772, we said:

"Fundamental fairness in judicial procedure requires that the court may impose an enhanced penalty under the habitual criminal act only upon the basis of a supporting judicial determination of the essential facts made after the defendant in the criminal case has been notified and heard upon the issue of his prior convictions. The failure to comply with such procedure is a denial of due process of law and makes the enhanced penalty a legal nullity. . . .

. . . . . . . . . . . . . . . .

". . . The fundamental requisites of due process, when the statute is to be invoked, are reasonable notice and an opportunity for a full and [complete] hearing, with the right to the aid of competent counsel." (pp. 239, 240.)

(Also, see *Mann v. State*, 200 Kan. 422, 436 P. 2d 358; *Goodwin v. State*, 195 Kan. 414, 407 P. 2d 528; *Browning v. Hand*, 284 F. 2d 346 [10th Cir. 1960], cert. denied 369 U. S. 821, 7 L. Ed. 2d 786, 82 S. Ct. 833.) The reason for such notice is to provide the convicted felon the opportunity to refute the evidence of former convictions or the evidence adduced which might be in a form inadmissible if challenged by proper objections. (*State v. Messmore*, 175 Kan. 354, 264 P. 2d 911.) There is nothing in this record to indicate defendant did not have reasonable notice of the state's intention to invoke the act. He was informed at the commencement of trial of such intention in the event of conviction, and, thus, had ample time to prepare his defense, if any. (*State v. Gates*, supra.)

No error appearing, the judgment is affirmed.