No. 45,346

STATE OF KANSAS, *Appellee,* v. FELIX LEMON, a/k/a BOB LEMON, *Appellant.*

(454 P. 2d 718)

Opinion filed May 17, 1969.

*Scott E. Jarvis,* of Topeka, argued the cause and was on the brief for the appellant.

*Gene M. Olander,* of Topeka, argued the cause, and *Kent Frizzell,* Attorney General, and *Robert D. Hecht,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from the district court of Shawnee County, Kansas, in a criminal action wherein the defendant was convicted by a jury of receiving stolen property in violation of K. S. A. 21-549. Sentence was imposed in accordance with the provisions of K. S. A. 21-534 and the habitual criminal act (K. S. A. 21-107a).

Various trial errors are raised, the primary one being whether the testimony of an accomplice was properly received in evidence.

In the lower court Felix Lemon, a/k/a Bob Lemon (defendant-appellant) was charged in an information with receiving stolen property consisting of nineteen console model color television sets having a total value in excess of $10,000.

The evidence disclosed that on the 23rd day of August, 1967, a Topeka appliance store, known as Jack Boring's, was burglarized and nineteen console model color television sets were stolen. The appellant and Charles Griffiths, a co-defendant, were engaged in the sale of these color television sets, some fourteen of them having been recovered by the Topeka police department. The sale of each

of these sets had been traced to either the appellant or his co-defendant. The stolen television sets were sold from $200 to $250 each and had a list price range between $550 to $1,000 per set.

Headquarters for the sales operation was the Sportsman Barber Shop in the 1300 block on Kansas Avenue in Topeka, where the appellant and Griffiths worked as barbers, Griffiths being the employee of the appellant.

At the time of the appellant's trial Griffiths had pleaded guilty and was awaiting sentencing.

Griffiths testified that he, Ted Henry and J. R. Timmons were selling the television sets in question, and the money received for them was turned over to the appellant. Although the evidence is conflicting it appears that Griffiths, Henry and Timmons were to receive a sum of money for each set sold. Griffiths, however, rather than taking money for his services, took a television set. This set was found in his home and was confiscated by the police.

Griffiths testified the appellant had previously requested permission to store television sets in his garage, stating that the sets were coming from the Detroit riot area. Griffiths said he had been dealing with the appellant on pushing some color television sets that were later to come out of the Detroit riot area. Griffiths' first contact with the television sets in question was at his garage shortly after the burglary of Jack Boring's appliance store in the early morning hours of August 23, 1967. Upon seeing the sets in his garage Griffiths noticed Jack Boring's stickers or tags on them. He removed the stickers or tags and destroyed them. Whereupon he insisted that the appellant move them from his garage. The sets were then removed by "two colored fellows" and taken to the basement of a country home in the 3700 block on Burlingame Road. Griffiths showed them the place to move the sets.

Griffiths' testimony was that he made most of the sales, but on at least one of the sales he received payment for a set from Timmons and immediately, in the presence of Timmons, transferred the money to the appellant. This is confirmed by the testimony of Timmons. Theodore (Ted) Henry testified the appellant took him to a darkened basement in a rural Shawnee County home and sold him one television set, receiving $250 from him, and then the appellant aided him in loading two sets into a truck and the appellant took Henry to his home where he aided in unloading them.

Two witnesses, including Griffiths, testified the appellant tried

to borrow $1,000 from them to pay for the sets. A banker testified that on the same date as the burglary of Jack Boring's store, the appellant borrowed $1,500 from the bank, and within a week paid $1,000 of it back. Griffiths testified the appellant gave him $1,000 one or two days after the burglary of Jack Boring's to give to "A colored fellow that came in the barber shop."

Griffiths testified the color television sets were being marketed by the appellant, and that he was merely aiding the appellant in the sale of the sets, knowing they were stolen and where they came from; that all the money collected on the sale of sets by Griffiths was turned over to the appellant.

The appellant contends he was not afforded a fair and unbiased trial as defined by the Sixth, Fifth and Fourteenth Amendments to the Constitution of the United States and Section 10 of the Bill of Rights of the Constitution of the state of Kansas.

On this point he charges that the issue of guilt or innocence was not reliably determined in this case. He argues the only evidence adduced by the prosecution that the appellant actually knew the television sets in question were stolen property came from the co-defendant, Griffiths.

Griffiths had previously entered his plea of guilty to the charge of receiving stolen property and at the time of the appellant's trial was awaiting sentencing upon such plea. By reason thereof it is argued by the appellant under such circumstances it should be apparent the co-defendant would have every reason to be as co-operative as possible with the prosecution in order to secure the best recommendation regarding his sentence, thereby making his reliability as a witness extremely suspect.

The foregoing argument coupled with the appellant's attack upon several instructions given by the trial court (which the appellant has not seen fit to set forth in the record) leads the appellant to the conclusion that he was denied a fair trial because of the admission of the testimony of the co-defendant, Griffiths, in evidence.

The appellant's argument is presented on the assumption that Griffiths' testimony was the only evidence before the trial court linking the appellant to the offense. This approach excludes the testimony of J. R. Timmons, who saw Griffiths surrender the money paid by Timmons for a set he sold another to the appellant. It also excludes the testimony of Theodore Henry that the appellant had taken him in the nighttime to the basement of a rural home and

helped him remove two of the sets. Henry also testified the appellant later called him by telephone and told him the sets "were stolen and to get rid of them." In a later conversation with the appellant concerning the issuance of a subpoena, the appellant told Henry he ought to get out of town.

Timmons testified the appellant told him:

" 'When they serve you with a subpoena about the only thing you can do is that you can take a vacation or you can just disappear, you can get sick like some other guy.' "

The appellant ignores the testimony of Timmons and Henry favorable to the state on the theory that their entire testimony before the trial court was such as to indicate its unreliability.

These witnesses together with Griffiths were all implicated in the crime with which the appellant was here charged, and counsel for the appellant made the most of it at the trial and in argument to the jury. Henry and Timmons were both given immunity from prosecution by the state, and counsel for the appellant fully cross-examined them before the jury on it. Basically, the appellant's attack is upon the credibility of these witnesses, but the extent to which their testimony was worthy of credence was for the jury to determine and not this court on appellate review.

The appellant's attack upon several instructions given by the trial court is not adequately presented in the record for review. The record does not show any objections to instructions given, nor does the record presented for review set forth any of the instructions given by the trial court, not even those under attack. Under these circumstances the appellate court is in no position to consider a claim that improper instructions were given. (See, *State v. Peasley,* 179 Kan. 314, 295 P. 2d 627; *State v. Johnson,* 189 Kan. 571, 370 P. 2d 107; *State v. Ellis,* 192 Kan. 315, 387 P. 2d 198; and *State v. Omo,* 199 Kan. 167, 428 P. 2d 768.)

At the hearing on the motion for a new trial the appellant presented tape recordings of statements made by Griffiths and Timmons to the appellant in the privacy of the appellant's automobile after the trial of the action. These tape recordings contained statements that were contrary to certain key testimony given by these witnesses at the trial which linked the appellant to the offense.

Each of these witnesses testified at the hearing on the motion for a new trial to the effect that he was in fear when the statements were made with only the appellant and the witness present; and

that under the circumstances they would have said anything the appellant wanted them to say. The witnesses when in court under oath affirmed their prior testimony given at the trial of this matter. The trial court after hearing the motion for a new trial found the witnesses affirmed their prior testimony, and the evidence presented by the tape recordings did not show any material variation in their testimony. Under these circumstances we cannot say the trial court erred in denying the appellant's motion for a new trial on the basis of the tape-recorded statements. (See, *Martin v. Edmondson,* 176 Kan. 374, 270 P. 2d 791.)

The appellant next contends the state did not prove the property alleged to have been stolen was actually stolen property, or that the appellant received such property knowing it to have been stolen.

The representative of Jack Boring's who testified stated the color television sets taken from Jack Boring's were either owned by or were under consignment to Jack Boring's. The appellant argues if the sets were under consignment to Jack Boring's, they were not the property of Jack Boring's. Hence, it was not shown that a larceny actually occurred; "that it was not shown that it was not someone having a claim of ownership who committed the burglary and took the property."

If the television sets in question were on consignment to Jack Boring's, the store had a right to possession over all other persons. Proof of a greater right to possession than the thief is always sufficient proof of "ownership."

The appellant's contention that there is no proof he knew the sets were stolen flies in the face of evidence which the jury was entitled to give credence. The jury was entitled to give credence to evidence which would establish that approximately thirty days prior to the burglary of Jack Boring's store, arrangements were made for several persons to try to sell color television sets which were supposed to be coming from the Detroit riot; that the appellant sought a storage place and did store the sets stolen from Jack Boring's in Griffiths' garage; that he caused the sets to be moved to a different location when directed; that he received money from the sale of the sets; took Henry to a darkened basement of a rural house where the sets were located, sold him one set and gave him possession of another and aided in delivery; instructed Henry to "get rid" of the sets; and was selling sets valued at between $550 to $1,000 for $200. All of this

evidence was sufficient, if believed by the jury, to establish the crime charged.

The appellant contends he was improperly sentenced under the habitual criminal act. Counsel for the appellant states he never received notice of the state's intention to proceed under the habitual criminal act, although he concedes the notice was filed in court and the county attorney certified that he mailed a copy to counsel for the appellant. It may be conceded the defendant in a criminal action is entitled to notice that the state intends to invoke the provisions of K. S. A. 21-107a. The appellant also concedes it may be shown that both the appellant and his counsel were aware that the habitual criminal act might possibly be invoked.

The trial court found the state had duly filed its notice of intention to seek sentencing under the provisions of the habitual criminal act. While the appellant's counsel denied receiving a notice in the mail, the trial court found from the appellant's own testimony on the motion for a new trial that he knew the state intended to seek sentencing under the habitual criminal act. Assuming, under these circumstances, counsel did not receive the notice, the appellant was present at the hearing with his attorney, and no contention is made that he did not have full opportunity to be heard on all matters under consideration, and to controvert the allegations that he had been convicted of a previous felony which would make him subject to the penalties of the habitual criminal act. (*Hicks v. Hand,* 189 Kan. 415, 369 P. 2d 250; and *Burnett v. State,* 199 Kan. 362, 429 P. 2d 923.)

The appellant contends his right to the effective assistance of counsel was thwarted by the trial court's refusal to grant a continuance before trial, and by its refusal to order production by the prosecution for the use of appellant's counsel of statements made by prosecution witnesses sometime prior to the trial.

The record establishes the complaint against the appellant in the instant case was filed in the court of Topeka on the 30th day of August, 1967; a preliminary examination conducted on the 6th day of November, 1967; that arraignment was had on the 12th day of January, 1968; and that trial was set for the 4th day of March, 1968. It was not until the day set for trial that a request for continuance was made. The appellant made no showing of cause other than that his father had a week or so earlier been operated. Under these circumstances, whether or not a continuance is granted is within the

sole discretion of the trial court, and absent a showing of abuse of discretion such ruling will not be disturbed on appeal. The record here shows no abuse of discretion. (*State v. Dickson,* 198 Kan. 219, 424 P. 2d 274.)

The appellant relies upon the following quotation in *Brady v. Maryland,* 373 U. S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194:

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (p. 87.)

The appellant also cites *Giles v. Maryland,* 386 U. S. 66, 17 L. Ed. 2d 737, 87 S. Ct. 793, as further explaining the *Brady* case.

The appellant argues the record reveals that a number of statements made by prosecution witnesses were withheld and suppressed by the prosecution, and that requests of counsel for the defense for the production of these statements were overruled by the trial court.

The state concedes it did not supply the appellant with copies of pretrial statements of witnesses against the appellant. The state did, however, provide the appellant with the pretrial statement of the co-defendant, Griffiths, for use during cross-examination. The statements taken by the state, of which the appellant complains, were taken at an inquisition conducted by the county attorney of Shawnee County, in which immunity was granted to some of the witnesses. The appellant complains of the fact that the witness, Henry, was not permitted to have counsel of his own at the inquisition, and the appellant's counsel cross-examined the witness, Henry, to some extent on this point. The substance of Henry's testimony as a result thereof was that his testimony might well have been different had he been permitted to have counsel present. Obviously, the appellant cannot assert as error a right which Henry may have had to counsel at an inquisition proceeding. (See, *State, ex rel., v. American Oil Co.,* 202 Kan. 185, 446 P. 2d 754.)

Cross-examination of Henry established that he made no prior statement to the prosecution more favorable to the appellant than his testimony given under oath in court.

This court has heretofore held that a report compiled by a law enforcement agency in the course of its investigation into a criminal offense is quasi-private in character, and it was not error for the trial court to refuse a defendant's motion to require the state to produce such a report in court for the defendant's inspection and

use in cross-examination of a witness whose statement was contained therein. (*State, ex rel., v. Showalter,* 189 Kan. 562, 370 P. 2d 408; *State v. Hill,* 193 Kan. 512, 394 P. 2d 106; and *State v. Oswald,* 197 Kan. 251, 417 P. 2d 261.)

The factual situation here presented does not warrant full consideration of the Federal authorities. Counsel for the appellant was given the prior written statement made by Griffiths to cross-examine Griffiths, and its use was fully developed showing that Griffiths had made prior inconsistent statements. The critical issue upon which the appellant sought the prior statements made by witnesses was the *credibility* of such witnesses whose testimony linked the appellant to the crime. Aside from Griffiths, the only other witnesses in this category were Timmons and Henry.

It has been impossible to make an intelligent review of the record presented by the parties herein. Favorable portions of the testimony in the transcript have been excerpted by the appellant in his abstract, other portions favorable to the prosecution have been excerpted by the state in a counter abstract, which the appellant challenged in a reply with further excerpts. Of necessity, the court procured a copy of the transcript from the lower court to make its review of the evidence.

A review of the transcript discloses the testimony of Timmons and Henry to be rather shoddy. Timmons was cross-examined on statements he made at the preliminary hearing disclosing inconsistent statements made by this witness on vital points in his testimony. Henry's capability of making inconsistent statements was also brought out on cross-examination by appellant's counsel, as heretofore indicated. Henry's overall testimony may well have been interpreted by the jury as failing to implicate the appellant.

Under these circumstances prior statements made by the witnesses could not have assisted the appellant more than cross-examination had accomplished. Actually, the state offered to supply the prior statements of these witnesses to the appellant on the condition that the appellant put them in evidence, but this offer was declined. The prior statements made by these witnesses were not used by the state to examine the witnesses on the witness stand, and nothing in the record of trial even suggests the prior statements made by Timmons and Henry were favorable to the appellant within the meaning of *Brady* or *Giles.*

Assuming the appellant was entitled to a copy of the prior written

statements made by Timmons and Henry at the inquisition, a review of the transcript discloses the appellant was not prejudiced by the order of the trial court denying the appellant's motion for their production.

For those interested in pursuing the point further, see, in addition to the *Brady* and *Giles* cases cited by the appellant: *Jencks v. United States,* 353 U. S. 657, 1 L. Ed. 2d 1103, 77 S. Ct. 1007; *Palermo v. United States,* 360 U. S. 343, 3 L. Ed. 2d 1287, 79 S. Ct. 1217; *Rosenberg v. United States,* 360 U. S. 367, 3 L. Ed. 2d 1304, 79 S. Ct. 1231; *Duncan v. United States,* 379 F. 2d 148 (D. C. Cir. 1967); *Daniel v. State,* 118 Ga. App. 370, 163 S. E. 2d 863; *Armstrong v. State,* 214 So. 2d 589 (Miss. 1968); *State v. White,* 15 Ohio St. 2d 146, 239 N. E. 2d 65; and *Noel v. State,* 215 N. E. 2d 539 (Ind. 1966), cert. denied 385 U. S. 934, 17 L. Ed. 2d 214, 87 S. Ct. 294.

Finding nothing on appellate review of the record which warrants a reversal, the judgment of the lower court is affirmed.